**GIRARD TRUST BANK and Markley H. Boyer, Executors of the Estate of Francis Boyer, Deceased**

v.

**The UNITED STATES.**

No. 45–78.

United States Court of Claims.

Feb. 11, 1981.

Robert R. Batt, Philadelphia, Pa., attorney of record, for plaintiffs. Bruce L. Castor, B. John Williams, Jr., and Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., of counsel.

Jay G. Philpott, Jr., Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant. Theodore D. Peyser, Washington, D. C., of counsel.

Before COWEN, Senior Judge, and KUNZIG and SMITH, Judges.

### OPINION

SMITH, Judge:

This case is before the court again because of a dispute between the parties as to the proper computation under Rule 131(c) of the amount recoverable by plaintiffs under our earlier decision on the merits.[1] In *Girard I* it was held that defendant may make refund of an overpayment of federal estate tax liability by reinstating "flower" bonds of the same series and in the same face amount as those used by taxpayers in remitting the overpayment to defendant. It was also held that plaintiffs are entitled to receive statutory interest on the overpayment at the rates provided by I.R.C. § 6621, as argued for by plaintiffs, and not at the flower bond interest rate of 3½ percent per annum, which had been allowed by defendant.

Plaintiffs' Rule 131(c) computation applies the rates provided in section 6621 to the "amount of the overpayment" represented by the *face amount* of the refunded

flower bonds, whereas defendant's computation applies the same rates to the *fair market value* of the same refunded flower bonds. The opinion in *Girard I* did not provide specifically for this element of the computation.

Plaintiffs contend that, in stating the issue as whether plaintiffs are entitled to receive statutory interest on the *amount* of the refunded overpayment, the court in *Girard I* decided the issue now before us, inasmuch as there is no dispute as to this "amount." Defendant contends that the court's rationale in applying the statutory rate, *i. e.,* as compensation for loss of control of the property, inherently limits plaintiffs to compensation for loss of the rights to invest, use, or assign such property, which rights could only be productive in relation to the market value of such property. The question is unique, and the answer far from self-evident. For the reasons stated below, and after hearing oral argument, we hold for defendant.

### I.

The code contains a concise definition of "deficiency."[2] If it contained a correspondingly specific definition of "overpayment," which it does not, our task might be simpler, for the statutory provision for payment of interest[3] is clear and unambiguous:

(a) RATE.—*Interest shall* be allowed and paid *upon any overpayment* in respect of any internal revenue tax *at an annual rate established under section 6621.* [Emphasis supplied.]

If this section actually provided for interest on the *amount* of any overpayment, consistent with plaintiffs' argument, our task might be equally simple, because there is no dispute as to that "amount."[4]

It could be argued that, whereas the statutory provision for *payment with bonds*

---

1. *Girard Trust Bank v. United States,* 221 Ct.Cl. 134, 602 F.2d 938 (1979) (*Girard I*).

2. I.R.C. § 6211.

3. I.R.C. § 6611(a).

4. In fact, defendant's initial position was that the overpayment equated with the face amount of the bonds, but that interest on the "overpayment" was allowable only at the "contract rate" of 3½ percent.

in section 6312 by implication justifies the *repayment in bonds,* as approved in *Girard I,* there is no such implication in section 6611(a) which would justify an application of the interest rate to any figure other than the amount of the statutory "overpayment." Although the question is a close one, we conclude that the provision for payment or satisfaction of estate tax liability through the use of flower bonds at their face value, being itself a departure from the usual and customary provisions for the collection and payment of taxes, requires that the application of other pertinent sections of the code be consistent with this special provision. In determining the proper application of these other sections, it is our intention to observe rather than disregard the admonition of Chief Justice Booth of this court in *Eastman Kodak Co.*:[5]

This case exemplifies in a marked degree the futility of predicating a governmental liability for a tax or interest refund upon any other basis than the revenue laws.  * * *

## II.

■ Section 6401 does not define an "overpayment," but does provide that the term "includes" certain enumerated items which will be treated as or "considered" overpayments. An "overpayment" is not necessarily a form of "payment." It can be the "amount" by which an "amount allowable as credits" exceeds "the tax imposed."[6]

Use of the term "the tax imposed" rather than "the *liability* for tax," disposes of any argument that an overpayment, for purposes of section 6611, necessarily occurs with respect to an interim liability. In fact, under the provisions of section 6401(c), an amount paid as tax may constitute an "overpayment" even though there was *no* tax "liability" in respect of which such amount was paid. On the other hand, one may not unilaterally establish an "overpayment" by the "deposit" of money with the district director in "payment" of an amount designated as a "tax."[7] "Liability" and amounts "due" normally depend upon "assessment," and the latter is entirely a Government, not a taxpayer, function.[8] Thus an actual "liability" can eventually constitute an "overpayment" for the reason that the "tax imposed" by law, which is to say the correct amount of the "entire tax liability" as finally determined, is less than the total of the amounts paid by or credited to the taxpayer, as tax. This is not to say that the "overpayment" does not *occur* until the final determination of the tax; it merely means that there cannot be an ascertainment that there *has been* an overpayment of tax until the "tax imposed" has been ascertained.

■ The date of overpayment, from which date the statutory interest runs, is determined in accordance with Treas.Reg. § 301.6611–1(b) (1980). In the instant case, when the tax reported on the estate tax

5. *Eastman Kodak Co. v. United States,* 82 Ct.Cl. 504, 536, 13 F.Supp. 435, 451, *cert. denied,* 299 U.S. 581, 57 S.Ct. 46, 81 L.Ed. 428 (1936).

6. I.R.C. § 6401(b). The definition of "deficiency" contained in section 6211 also uses the term "tax imposed" (by the statute) as the amount against which payments, assessments, and rebates of "tax" are compared. It seems clear that where there is a dispute, the "tax imposed" is the tax as finally determined.

7. *See Charles Leich & Co. v. United States,* 165 Ct.Cl. 127, 329 F.2d 649, *rehearing denied,* 165 Ct.Cl. 151, 333 F.2d 871 (1964).

8. I.R.S. § 6201(a). The oft-repeated description of the American system of taxation as a system of "self-assessment" is a rhetorical taradiddle. For example, the Internal Revenue Service does not recognize officially an " 'amended return', so-called." Treas.Reg. § 301.6211–1(a) (1980). Assessment of United States taxes has, since time immemorial, been made by the Government's *recording the liability* of the taxpayer. I.R.C. § 6203. Originally this was done by a Government employee by hand, by inscribing the amount of the *liability* next to the name of or in the account of the taxpayer. The entry may now be an entirely mechanical process, but there are some old-timers who believe that deep in the bowels of the giant computer at the service center there still sits a little old man in green eyeshade, meticulously enrolling on parchment the figures banged out by the machine.

return[9] was satisfied, there was an overpayment because that "payment" exceeded the "correct liability," or "entire tax liability," which means the "tax imposed," i.e., the tax as finally determined to have been imposed by the statute. In Girard I we held that the overpayment was measured by the value, not the face, of the bonds tendered in payment. In so holding, the special considerations surrounding this special form of satisfaction of tax liability were recognized by us as applicable until final determination of the tax imposed.

We held in Girard I that the statutory interest is to be applied to the overpayment because of the loss of control over the property. Such loss of control prevented plaintiffs' exercise of the "right to invest, use, or assign the property."[10] This is the very foundation of the provision for statutory interest on overpayments and underpayments.[11] That principle compels us to award statutory interest to plaintiffs on the amount represented by the value of the property removed from their control. This will put the parties back where they would have been if the tax reported on the estate tax return had been identical to "the tax imposed," as finally determined. This is the full import of Girard I, namely, that the statute, the terms of issue and redemption, and the regulations contemplate that flower bonds are redeemable at par prior to maturity only for the purpose of having the entire proceeds payable in satisfaction of taxes "due," which in such case means the entire or correct liability for the tax imposed by law, as finally determined.[12] Plaintiffs could have used a face amount of the bonds only sufficient to satisfy the tax imposed. The excess bonds held by plaintiffs (and accordingly such excess bonds returned to plaintiffs) carry with them no special benefit to plaintiffs other than whatever benefits plaintiffs could derive from their market value. It is this value and its potential use that Congress had in mind in providing statutory interest. Plaintiffs have received the full special benefit of the law which enabled them to satisfy "the tax imposed" by use of flower bonds. There is no "windfall" to either party in the allowance by this court of statutory interest on the overpayment, other than that occurring because of the happenstance that the commercial cost of borrowing money happens to be above or below the rates established in section 6621. The potential for such a "windfall" is as a practical matter impossible to eliminate, and, in any event, exists equally for both parties.

## CONCLUSION OF LAW

We adopt defendant's Rule 131(c) computation of statutory interest refundable and reject plaintiffs' computation. Plaintiffs are entitled to an interest refund of $32,827.40. Judgment is entered accordingly.

9. Which the district director was required to assess. I.R.C. § 6201(a)(1).

10. Girard Trust Bank v. United States, supra note 1, 221 Ct.Cl. at 146, 602 F.2d at 945.

11. I.R.C. § 6621 provides for a variable interest rate which is to be kept in line with interest rate movements in the commercial money market. The legislative history of the section makes clear that interest on overpayments is awarded because a taxpayer making an overpayment "is not receiving the value he could obtain by the use of his own funds." S.Rep.No. 93–1357, 93d Cong., 2d Sess., reprinted in [1974] U.S.Code Cong. & Ad.News 7478, 7496. See also Deputy v. duPont, 308 U.S. 488, 498, 60 S.Ct. 363, 368, 84 L.Ed. 416 (1940).

12. If the denomination of the flower bond is too large to apply the entire proceeds in payment of the tax due, taxpayers must exchange such flower bond for a smaller denomination, which new denomination is capable of having the entire proceeds applied in payment of the tax due. Rev.Proc. 69–18, 1962–2 C.B. 300. The U.S. Tax Court has held that flower bonds which could have been used to pay the estate tax as finally determined (even though not so used) must be valued in the estate at par rather than market. Estate of Fried v. Commissioner, 54 T.C. 805 (1970), aff'd, 445 F.2d 979 (2d Cir. 1971), cert. denied, 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 663 (1972). See also Estate of Simmie v. Commissioner, 69 T.C. 890 (1978); Bankers Trust Co. v. United States, 284 F.2d 537 (2d Cir. 1960), cert. denied, 366 U.S. 903, 81 S.Ct. 1047, 6 L.Ed.2d 204 (1961).