NICHOLS, Circuit Judge,
concurring.
I join in the judgment, and in the opinion of the court, except where subsequent remarks may be inconsistent.
I fear I may have authored the use of the word “reprehensible” as descriptive of the attorney conduct which might justify an award of counsel fees to a party litigating against the government under 28 U.S.C. § 2412. It seems to cause the present panel some embarrassment. I do not think the panels in Papson v. United States, Ct.Cl. No. 602-80T (order entered June 18, 1982, to be published, 231 Ct.Cl. -), or in Estate of Lillian G. Berg v. United States, 687 F.2d 377 (Ct.Cl.1982), intended to construe the statute as defendant now says that court did construe it, as limited to instances of censurable, or culpable behavior, or measures taken in bad faith. Such a construction would have gone far to nullify the statute and would have been dictum in the cases before the court, when the actions of government counsel had been perfectly reasonable, things such as we ourselves would have done if in their place, probably, though *1372 they did not prevail and we would not have either. In Webster’s Unabridged, the preferred meaning of “reprehend” is “voice disapproval of, especially after judgment” and the preferred meaning of “reprehensible” is “worthy of being reprehended.” I continue to believe a court should not award counsel fees unless its attitude towards the conduct of government counsel includes some degree of disapproval, but I presume Judge Friedman would disapprove of conduct he held unreasonable, so there is no disagreement between us in this case.
It is probably wise to deep-six use of the word “reprehensible” in this context, because it also has dictionary meanings denoting conduct that really stinks. In other words, it is ambiguous, and what it meant to the Court of Claims panels is not necessarily what it might mean to others. One cannot argue one’s words are impossible to misconstrue when someone has in fact misconstrued them. We will in the future try to give content to the word “unreasonable” in application to concrete cases. As with obscenity, we may not be able to define the conduct Congress meant to single out, but we will know it when we see it. I think, in light of the statutory purposes, disapproval of attorney conduct is enough to award fees, even though it was taken in good faith and fell short of the censurable or culpable. Government counsel here made a most persuasive argument that his actions in the Court of Claims had been such as any attorney seeking in good faith to defend his client’s interests would have felt obliged to take, and I could not voice disapproval myself, even disapproval free from censure.
The court so far has attempted to apply its reasonableness test under 28 U.S.C. § 2412 chiefly or wholly by assessing the government attorney’s reasonableness in expecting that his contentions of fact and law would prevail. This, of course, is a factor not to be overlooked, but it is not all. On the one hand, duty might require a government counsel to take a stand which, though not frivolous, stood as he knew but a slim chance of prevailing. On the other hand, there are in my view other cases where government conduct, though subjectively in good faith, is in fact oppressive. It is quite clear to me, both from the text of the statute itself, with its limits on the size or wealth of the claimant who may receive an award of fees, and from the legislative history, that Congress perceived the existence of litigants not having the resources of the United States, and that this, inequality, coupled with oppressive exploitation of it, might at times effectively deny justice even though not so intended.
Broad Avenue Laundry and Tailoring v. United States, 693 F.2d 1387 (Fed.Cir.1982) (Broad Avenue II), is an example of the first category. An agency such as the Department of Defense, which goes to the trouble of creating an independent, impartial, and well-qualified board, to hear disputes under its procurement contracts according to the principles of due process, is certainly entitled to expect that the resulting board decisions will be supported and defended in the Article III courts by the only counsel the agency is permitted to employ there. Possibly instances may occur when this is not so, but frankly, I have never seen one in the 18 years I have been engaged in adjudicating such cases, and I believe they must be rare. Broad Avenue I was not such a case. There was oppressive behavior towards Broad Avenue, an innocent and confiding small business that was shamefully treated, but this was not by Department of Justice attorneys and not in the Court of Claims. The case came to that court fit for adjudication by appellate review, and it was thus adjudicated, a procedure easy on the resources of small litigants. The government position was highly obnoxious in that it exploited what it said was the absence of authority and ignorance of relevant law on the part of its duly designated contracting officer. Also, the government position would, had it prevailed, have undermined the foundations of disputes clause procedure by compelling government contractors to challenge contracting officer’s orders, and to defy them, instead of obeying them and claiming relief as for a constructive change order. But these were errors of the board, not of *1373 government counsel in the Court of Claims, and were res gestae when the case got to that court. They were far short of the extraordinary case that would have justified denying the board decision any defense.
In Kay Manufacturing Co. v. United States, 676 F.2d 555 (Ct.Cl.1982) (Kay I), I saw and am urging in my dissent in Kay II, that the court see an example of outrageous oppression displayed right in the Court of Claims, which that court could not ignore. The reasons why I think that are fully spelled out in the dissent and need not be repeated here. At the time Kay’s petition was filed in the Court of Claims, the government may have had a valid claim for refund of excessive profits and the Renegotiation Board had certainly thought so. But by the peculiar provisions of the Renegotiation Act, the case had to be retried de novo and the board decision enjoyed no presumption of validity. Thus the conditions that in an ASBCA case virtually compel Department of Justice counsel to adopt and defend the board position, did not at all obtain in Kay. Government counsel was entirely free to dump, and in fact did dump, the board decision, and embarked on a line of his own, for which he must take moral responsibility, if it was oppressive. Whatever the situation had been on the original filing date, when the case went to the usual prolonged and costly trial, prospects of government success were gone because counsel pursued a line of his own choice, in which he had no prospect of success.
This case, Gava, is different from either. Counsel was not virtually committed to a board line, as in Broad Avenue, but on the other hand, I see nothing oppressive about his conduct. First, it was a summary judgment case. There was no prolonged and costly trial. Second, counsel was confronted with a number of extravagant claims which could have eventuated in holdings which were most undesirable precedents from the government point of view. Government counsel must consider, far more than private counsel, the precedential impact of what occurs in his cases. The Gava decision may be considered a success from the government point of view, inasmuch as it went off on grounds that will rarely recur and undesirable precedents were averted. Third, whatever cost and inconvenience claimant was put to was more or less the result of his own conduct, which was in several respects unreasonable. If he not only gets back pay and reinstatement, but counsel fees besides, there is provided a disincentive for government employees to act reasonably. Fourth, the duty of a government counsel in an Article III court no doubt includes extricating his client, the government, from the adverse consequences of the client’s officer’s blunders, however egregious.
I suppose I would allow government counsel a broader scope to make assertions of fact or law possibly but not likely to be accepted by the court, if he makes them on appeal or in a summary judgment motion and not in course of bringing about a prolonged and costly trial. The issue of substantial justification is in my view to be balanced and weighed equitably in light of the resources of the adverse party and the type of court proceeding involved. It should not be forgotten, too, that counsel in a court proceeding is an officer of the court. The court has an interest in averting the abuse of its process and the waste of judicial resources. It appears to me that 28 U.S.C. § 2412 is to be regarded as one of the means Congress has put in the hands of the judiciary to use towards these ends, and the law is to be construed with that in mind.
If an attorney for, say, the John Hancock, so disapproves of his client’s decision in some matter that he declines to defend it in court, this is not a serious matter as the client is free to find other counsel. If a Justice Department lawyer so disapproves of a Department of Defense decision that he declines to defend it in court, that is a more difficult matter to resolve, because the Department of Defense is allowed no other counsel. It seems to me that government counsel in Gava, to please our dissent herein, would have had to so refuse, and yet the problems of the merits panel would *1374 have been multiplied if the government had had no effective advocate. It did have one, whose efforts were helpful to the court even if he did not prevail. Here is a dilemma, and how we mete out disapproval should be influenced by our notions about it.