Carroll CAVANAGH, Jr., as Executor of the Will of Carroll Cavanagh, Deceased, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 11–85 T.

United States Claims Court.

Aug. 3, 1987.

Carroll Cavanagh, Jr., Washington, D.C., for plaintiff.

Teresa T. Milton, Washington, D.C., with whom was Mildred L. Seidman, for defendant.

## OPINION

HORN, Judge.

Plaintiff, Carroll Cavanagh, Jr., as the Executor of the will of Carroll Cavanagh, the decedent, brought this case before the Court on January 9, 1985, under 28 U.S.C. § 1491.[1] Plaintiff's complaint seeks damages stemming from the defendant's refusal to redeem certain United States Treasury Bonds known as "flower bonds," which were tendered in payment of federal estate taxes. The defendant has conceded that plaintiff tendered "flower bonds" with a face value of $50,000.00, for payment of the decedent's estate taxes. The defendant has also conceded that its refusal to redeem the bonds constitutes a breach of contract. Thus, the issue before this Court, addressed in plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment, is whether damages resulting from the defendant's refusal to redeem flower bonds should be assessed from the date the bonds were tendered for redemption or from the date the defendant made the determination to redeem the bonds.

### Background

The relevant facts submitted by the parties and confirmed at the oral argument on

1. This case was transferred to Judge Horn after the retirement of Judge Wood in 1986. Following oral argument the parties indicated that they would explore the possibility of settlement. On May 18, 1987, the defendant filed a status report to inform the Court that there was no further possibility that a settlement agreement would be reached by the parties. Plaintiff has not notified the Court to the contrary.

the motions are largely uncontested.[2] On April 21, 1978, Carroll Cavanagh died. At the time he died, he owned flower bonds[3] with a face value of $50,000.00, bearing interest at the rate of 3½%. The maturation date on the bonds was 1998. The decedent's estate tax return was filed on January 22, 1979, showing a tax liability of $79,288.81. Cash in the amount of $28,964.91 and the $50,000.00 flower bonds, with accrued interest in the amount of $323.90, were tendered to satisfy the estate tax liability.[4]

The Bureau of Public Debt (Bureau) refused to redeem the bonds, pending an inquiry of the decedent's mental capacity when the bonds were purchased. By letter dated November 8, 1979, and a subsequent letter of February 8, 1980, the Bureau requested the estate's legal representative to supply evidence relating to the decedent's mental capacity at the time the bonds were acquired. The record further reflects that the Bureau refused to redeem the bonds and subsequently returned them to the plaintiff.

During the same period, the estate tax return was audited by the Internal Revenue Service (IRS), and several adjustments were ordered, which increased the estate's tax assessment by the amount of $1,449.43. The audit report was dated March 14, 1980. In April, 1980, the executors of the estate consented to the increased assessment. The IRS notified the estate representatives on July 7, 1980, of the total deficiency of taxes owed by the estate, including the adjustment and late penalties.

On July 16, 1980, the estate made a cash payment of $51,733.33[5] to the IRS to satisfy its tax liability resulting from the increased assessment and the unredeemed flower bonds. On October 26, 1981, the estate filed a claim for refund of $48,374.27. Shortly thereafter, on November 1, 1981, the Bureau redeemed the flower bonds at par value. On November 5, 1981, the estate was credited $50,827.45 as a result of the flower bonds redemption at par for $50,000.00 and accrued coupon interest on the bonds in the amount of $827.45. On May 27, 1982, the IRS issued the estate a refund in the amount of $55,539.78, including statutory interest from the date of the credit, November 5, 1981, until the date of the issuance of the refund May 27, 1982.[6]

2. Although there are some inconsistencies in the record regarding the actual dates for key events, generally amounting to a matter of days, the Court concludes that it can decide the legal issues in the case without a need to determine the exact dates. The Court anticipates that the parties can easily resolve remaining differences when they prepare the joint stipulation of damages, as directed in the last paragraph of this opinion.

3. Flower bonds, a type of debt instrument, were issued by the Department of Treasury, Bureau of Debt, pursuant to the Second Liberty Bond Act, 31 U.S.C. § 752 (1976). Although no longer issued, some negotiable bearer bonds are still available for transfer and purchase on the market. Flower bonds are negotiable bearer bonds, issued substantially below par value and accrue interest at a low rate; nonetheless the bonds do contain a built-in incentive for marketing for estate taxes purposes. Flower bonds, regardless of when purchased, accelerate to maturation instantly if used to satisfy the estate tax liability of the owner.

4. The record herein indicates that the flower bonds were tendered to the Bureau of Public Debt on or about January 21, 1979, for redemption to be applied to the estate tax liability of Carroll Cavanagh; yet the record reflects that the estate tax return was filed one day later on January 22, 1979. For the purposes of consistency in this opinion, the Court deems January 21, 1979, as the date for both the filing of the return and the date the bonds were tendered.

5. This payment included the $50,000.00 deficiency resulting from the unredeemed bonds, the $323.90, which had been allowed for accrued coupon interest and the $1,449.43 increased assessment, which resulted from the March 14, 1980 audit report.

6. The ultimate redemption of the flower bonds increased the value of the decedent's estate and, therefore, required another reassessment of the decedent's tax liability, assessed interest, penalties and the offset of coupon interest. All of the mathematical computations included in the IRS audits are not delineated clearly in the records and are not, therefore, verifiable by the Court. The Court notes, however, that the method of computation is not disputed by the parties. Instead, at issue before the Court are legal principles, resolution of which will determine the final computation of damages.

Plaintiff claims that statutory interest, instead of the 3½% coupon interest, should be paid on the unredeemed flower bonds from January 21, 1979, the date of original tender, to November 1, 1981, the date of redemption. Plaintiff acknowledges that statutory interest for the period November 1, 1981 to May 27, 1982, was included in the refund check sent by the IRS. Plaintiff also claims administrative costs to the estate for attorney's fees and expenses attributable to the redemption of the bonds in the amount of $7,500.00. Plaintiff concedes that his recovery of statutory interest should be offset by coupon interest.

The defendant "admits that its initial failure to redeem the flower bonds at issue constituted a breach" and, therefore, concedes liability for "legally cognizable elements of damages that could be proved" resulting from the delay in the redemption of the flower bonds. (Defendant's Reply Brief in Support of its Cross-Motion for Summary Judgment and In Opposition to Plaintiff's Motion for Summary Judgment, at 3.) The defendant, however, seeks to limit plaintiff's recovery to those damages attributable to the assessment for deficiency interest and failure to pay penalties of $5,990.82 between November 5, 1979 and November 17, 1980. The defendant also argues, however, that these damages should be offset by the amount of coupon interest paid to the plaintiff for the period between January 21, 1979 and July 16, 1980, and by the estate tax deficiency plus interest, created when the flower bonds were revalued from fair market value to par value, upon redemption.

*Discussion*

The defendant's concession of its breach in failing to redeem the flower bonds forces the Court to rely upon common law contract principles to determine the amount of damages due and owing to the plaintiff. In common law breach of contract cases, the general rule is to award damages so as to place the injured party in as good a position as he or she would have been had the breaching party fully performed. *Miller v. Robertson*, 266 U.S. 243, 257–58, 45 S.Ct. 73, 78–79, 69 L.Ed. 265 (1924); *Estate*

*of Lillian G. Berg v. United States*, 231 Ct.Cl. 466, 469, 687 F.2d 377, 379 (1982); *Northern Helex Co. v. United States*, 207 Ct.Cl. 862, 875, 524 F.2d 707, 713 (1975), *cert. denied*, 429 U.S. 866, 97 S.Ct. 176, 50 L.Ed.2d 146 (1976) (citing RESTATEMENT OF CONTRACTS § 329, Comment at 504 (1932)). To put plaintiff in as good a position as it would have been had the contract been fully performed, the bonds must be considered constructively redeemed at par value as of the date the breach occurred.

It is well established that the date of breach is the proper date to establish the starting date for the compensation of damages. A breach occurs at the time and place a party to the contract fails to perform. *Miller, supra; Estate of Lillian G. Berg, supra;* Corbin, *Contracts* § 1039 (1964); C. McCormick, *Damages* § 44 (1935).

Applying the common law principles discussed above, the Court determines plaintiff's damages as follows. After the Bureau failed to redeem the bonds and returned the bonds to plaintiff, plaintiff made a cash payment on July 16, 1980, to satisfy the outstanding tax liability. At that time, the outstanding tax liability included the unpaid estate taxes as a result of the unredeemed flower bonds and a deficiency assessment which had not been included in the original calculation. Sometime thereafter, plaintiff tendered the bonds again for redemption at par to satisfy the estate tax assessment. On October 26, 1981, the bonds with a par value of $50,000.00 had not been returned to plaintiff and plaintiff filed a claim for refund. Subsequently, the Bureau redeemed the bonds on November 1, 1981.

Defendant argues that November 1, 1981, the date the Bureau actually redeemed the bonds, is the date plaintiff's overpayment occurred because, until that time, the plaintiff had not truly made an overpayment of the taxes. The defendant's argument attributes no significance to the date the breach occurred. Under defendant's reasoning, regardless of the breach or errors by defendant, no damages would result until the bonds were actually

redeemed. The Court views the defendant's argument as antithetical to the ruling and reasoning in the *Berg* case. *See also, Girard Trust Bank v. United States,* 226 Ct.Cl. 366, 370–71, 643 F.2d 725, 728 (1981).

The *Berg* case [7] is very similar to the case before this Court. In *Berg,* flower bonds were tendered to partially satisfy the estate tax liability of a decedent. The Bureau of Public Debt refused to redeem the bonds. The bonds were returned to decedent's representative, which resulted in an underpayment of the *Berg* estate tax liability. Shortly thereafter, the plaintiff forwarded checks to the IRS to pay the estate's outstanding tax liability and the accrued deficiency interest. Plaintiff then distributed the bonds to the beneficiaries of the estate; the beneficiaries sold all of the bonds. The defendant in *Berg,* as did the defendant herein, admitted that its failure to redeem the flower bonds when tendered in payment of estate taxes constituted a breach of contract. As a result, to determine the plaintiff's damages, this Court's predecessor deemed the date of the breach to be the date of tender and constructively redeemed the bonds at par value as of that date.[8] Thus, the *Berg* plaintiff's damage was the difference between the par value and the fair market value for which the bonds were sold.

■ Bringing the *Berg* formula to bear to calculate damages in the instant case, this Court finds that the date of tender constitutes the date of breach. Damages must be calculated according to the constructive redemption of the bonds as of that date. In this case, the calculations to determine the measure of damages should include a total of (a) the statutory interest

under Section 6611 of the Internal Revenue Code of 1954, resulting from the plaintiff's overpayment, and (b) the improperly assessed penalties for unpaid estate taxes, less coupon interest from the date the breach occurred. 26 U.S.C. § 6611 (1982).[9]

Under the theory of constructive redemption, this Court holds that the bonds in this case were redeemed on January 21, 1979, the date of the original tender to the government by the plaintiff, and plaintiff's overpayment of estate taxes occurred on July 16, 1980, when plaintiff tendered the cash payment. Thus, interest, pursuant to Section 6611, and penalties assessed against the estate prior to July 16, 1980, due to the unredeemed bonds were improper. As a result, plaintiff is entitled to recover damages for all assessed interest and penalties which resulted from the Bureau's failure to redeem the bonds on January 21, 1979, when the bonds were tendered for payment of estate taxes.

In this case, actual redemption has no legal consequences, but for the acknowledgement of the previous breach. Thus, only the interest and penalties assessed against plaintiff for erroneous calculation were proper. In order to achieve a fair result, the damages awarded to the plaintiff, however, should be offset by the coupon interest accruing on the bonds subsequent to the constructive redemption.

Specifically, this Court concludes that plaintiff is entitled to recover for the deficiency interest assessment from January 21, 1979, the date of tender, to July 16, 1980, the date the estate made the cash payment. Plaintiff is also entitled to receive statutory interest for the over-

---

7. Pursuant to the case of *South Corp. v. United States,* 690 F.2d 1368, 1370 (Fed.Cir.1982), decisions of this Court's predecessor are precedent in this Court, regardless of the date of the decisions. Defendant attempts to argue that because the facts herein occurred prior to the *Berg* decision, the case is not binding upon the Court. The Court disagrees. Even, however, were defendant's legal theory of the relevance of previously decided cases to the case at issue correct, this Court agrees with the reasoning in *Berg* and would have arrived at the same result even without the benefit of reliance on the *Berg* decision.

8. The *Berg* case did not involve the statutory interest issue because the bonds were returned to the estate and sold prior to the finding of constructive redemption by the Court; therefore, an overpayment did not result.

9. § 6611. *Interest on overpayment.*
    (a) *Rate*
    Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at an annual rate established under Section 6621. (26 U.S.C. § 6611 (1982)).

payment made on July 16, 1980 through May 27, 1982,[10] the date the IRS issued the estate a refund in the amount of $55,-539.78, in accordance with Section 6611 of the Internal Revenue Code (26 U.S.C. § 6611). See *Girard Trust Bank, supra; Girard Trust Bank v. United States,* 221 Ct.Cl. 134, 141, 602 F.2d 938, 942 (1979).

Plaintiff further asserts that it should be awarded damages resulting from the defendant's breach to include accounting and legal fees expended in its pursuit to have the bonds redeemed. The defendant argues that plaintiff is not entitled to recover attorneys' fees in this action because the defendant's delay in redemption of the bonds was in good faith and cannot be found to be "reprehensible".

At the time the defendant refused to redeem the bonds owned by Carroll Cavanagh, there was litigation pending in several factually similar cases involving inquiries into the state of mind of the respective decedents in which the settlement of their estates involved the redemption of flower bonds. Given the similarity of the facts in the instant case to those ongoing cases, it was not unreasonable for the defendant to act cautiously. This Court, therefore, does not deem the defendant's inquiries into the decedent's state of mind or delay of redemption of the bonds in this case as "reprehensible". *Berg, supra; Papson,* 231 Ct.Cl. 743 (1982); *Campbell v. United States,* 228 Ct.Cl. 440, 657 F.2d 1174 (1981), and *Girard Trust Bank, supra.*

With respect to plaintiff's claim to recover attorneys fees, this Court agrees with the defendant that such recovery is barred under the prevailing case law. *Papson v. United States, supra.* See also *Berg,* 231 Ct.Cl. at 476, 687 F.2d at 383.

■ To the extent that plaintiff's claim currently before the Court is not for attorneys' fees and expenses incurred in litigation, but is for attorney fees and expenses resulting from the defendant's breach, plaintiff's claim for recovery is also denied.

This Court's predecessor in denying a plaintiff recovery of damages resulting from the government's breach of a contract, held that "[i]t is the kind of consequential damages not normally awarded in contract breach cases." *Kania v. United States,* 227 Ct.Cl. 458, 467, 650 F.2d 264, 269 (1981), *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 709 L.Ed.2d 210 (1981). In following the precedent, the Court also, therefore, denies that portion of plaintiff's claim which suggests recovery for fees and expenses incurred in pursuing the redemption of the bonds.

The parties are directed to submit to the Court forthwith a joint stipulation of damages in accordance with the attached order.

IT IS SO ORDERED.

---

10. The Court recognizes that plaintiff has previously received a refund of the statutory interest from the date the IRS allowed the credit, November 5, 1981, until the date of the refund, May 27, 1982. This Court's ruling, however, outlines the total periods of recovery for clarity.