878 F.2d 1444
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Arthur P. BECKER and Miriam Becker, and The Estate of
Stanley Rakusin, deceased, Shelton M. Binstock,
Muriel F. Rakusin and Anthony Rakusin,
personal representatives,
Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 89-1026.
 United States Court of Appeals, Federal Circuit.
 May 3, 1989.
 
 Before NIES, Circuit Judge, BALDWIN, Senior Circuit Judge, and MAYER, Circuit Judge.
 PER CURIAM.
 
 DECISION
 
 1
 On cross motions for summary judgment in these consolidated cases, the United States Claims Court, No. 263-84T and No. 264-84T (Aug. 11, 1988), entered an order granting the United States' motions, and dismissing taxpayers' complaints. We affirm.
 
 OPINION
 
 2
 Pursuant to section 6402(a) of the Internal Revenue Code, 26 U.S.C. Sec. 6402(a), the Commissioner "may credit the amount of [an] overpayment ... against any liability in respect of an internal revenue tax on the part of the person who made the overpayment...." Taxpayers recognize that this provision affords the Commissioner, and concomitantly denies them, authority "unilaterally [to] direct the application of overpayments to particular tax periods." Nevertheless, they argue that the Commissioner acted beyond the scope of his authority in refusing application of their claimed 1975 overpayments.
 
 
 3
 In preparing an income tax return, a taxpayer may determine that an overpayment has been made. See 26 U.S.C. Sec. 6402(b). However, the overpayment cannot be applied to offset an outstanding tax liability until it is "finally allowed" by the Commissioner. Standard Oil Co. v. United States, 5 F.Supp. 976, 988 (Ct.Cl.1934). Final allowance, in turn, requires a determination of the amount of tax due for the year in which the overpayment is claimed. See Girard Trust Bank v. United States, 643 F.2d 725, 727 (Ct.Cl.1981) ("there cannot be an ascertainment that there has been an overpayment of tax until the 'tax imposed' has been ascertained"). This determination "is entirely a Government, not a taxpayer, function." Id.; see also id. n. 8 ("[T]he Internal Revenue Service does not recognize officially an ' "amended return", so-called.' Treas.Reg. Sec. 301.6211-1(a) (1980). Assessment of United States taxes has, since time immemorial, has been made by the Government's recording the liability of the taxpayer. I.R.C. Sec. 6203"). Contrary to taxpayers' argument therefore, it was entirely appropriate for the Commissioner to withhold application of the claimed overpayments pending his assessment of their 1975 tax liability.
 
 
 4
 But, taxpayers maintain that a final determination was made when, in 1979, the Commissioner, acting through two Internal Revenue Service officials, "expressly approved" the overpayment shown on their amended returns for 1975. They submit that internal I.R.S. documents corroborate their contention. Accepting their reading of the documents, the argument still fails:
 
 
 5
 [A]n adjustment by the Commissioner of tax liability for a series of years, evidenced at the time by appropriate book entries upon the records of the collector and Commissioner, [does not] irrevocably determine[ ] the government's liability either to make refunds or compute interest on an overpayment in accord therewith. On the contrary, it is our view that, so long as the Commissioner keeps within the provisions of the revenue law, he may subsequently cancel, amend, or substitute another adjustment for the previous one, and the final determination establishes his official act. Book records are obviously subject to challenge by either the taxpayer or the government.
 
 
 6
 Eastman Kodak Co. v. United States, 13 F.Supp. 435, 451 (Ct.Cl.1936). Here, the Commissioner's final determination, although later overturned by the Tax Court, was communicated to taxpayers by notice dated February 2, 1981, and was to the effect that there was no overpayment, indeed there was a deficiency, for 1975.
 
 
 7
 Taxpayers' second argument, also premised on their alleged understanding with I.R.S. officials, is equally unpersuasive. Even the traditional elements of estoppel, which are less exacting than those applicable to government action, are not present here. Accepting that the I.R.S. officials represented to taxpayers that their computations were correct, and that they relied on those representations, the reliance was simply unreasonable.
 
 
 8
 Taxpayers acknowledge "that they received several communications indicating that [their claimed] overpayments had not been applied in the manner agreed upon." They insist that the Commissioner should be estopped, however, because "what the taxpayers relied on were the actions of I.R.S. representatives in 1979." But, taxpayers cannot escape liability because they ignored the Commissioner's numerous warnings. Before filing their 1981 tax returns, they knew their 1975 taxes were under audit, and that the Commissioner had not only refused to apply their claimed overpayments, but had assessed a deficiency. Doggedly determined to file their returns in accord with their own computations, they will not now be heard to contest the penalties they incurred as a consequence.