**GIRARD TRUST BANK and Markley H. Boyer, Executors of the Estate of Francis Boyer, Deceased,**

v.

**The UNITED STATES.**

No. 45–78.

United States Court of Claims.

July 18, 1979.

Robert R. Batt, Philadelphia, Pa., attorney of record, for plaintiff; Bruce L. Castor, B. John Williams, Jr., Martin J. Aronstein, and Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., of counsel.

Jay G. Philpott, Jr., Washington, D.C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D.C., for defendant; Theodore D. Peyser, Jr., Washington, D.C., of counsel.

Before DAVIS, NICHOLS and KASHIWA, Judges.

## ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge:

This federal estate tax refund case is before the court on the parties' cross motions for summary judgment. Both parties submit there are no material facts in dispute and we agree. The posture of the case is unique in the sense that the parties are in

agreement that there was an overpayment of estate taxes which plaintiffs are entitled to have refunded. The parties also are in agreement as to the amount of the refund. The disagreement in the case is over whether the form in which the Government made the refund is lawful (more precisely, whether an overpayment of estate taxes, which were paid with flower bonds,[1] can be refunded by a reinstatement of a portion of the flower bonds) and whether the Government must pay statutory interest, as prescribed in I.R.C. §§ 6611, 6621, on the amount of the refunded overpayment or merely interest at the reinstated flower bond rate (3½ percent per annum). After careful consideration of the briefs and oral arguments presented by the parties, as well as several postargument supplemental filings, we hold for the defendant on the form question and for the plaintiffs on the interest issue.

Francis Boyer died May 21, 1972. Plaintiffs are the executors of his estate. During the administration of the estate, Mr. Boyer's widow elected to take against his will, thereby becoming entitled to a one-third elective share of his estate. Since Mr. Boyer's will provided that all state inheritance taxes were to be paid out of the residue of the estate with no right of reimbursement from nonresiduary beneficiaries, plaintiffs took the position when filing the estate's federal estate tax return that the Pennsylvania inheritance tax paid in respect of the widow's elective share was not chargeable against that share. Accordingly, they deducted the one-third elective share, unreduced by any state inheritance taxes, as a marital deduction on the federal estate tax return.

Plaintiffs filed the return on February 20, 1973, showing estate taxes due in the amount of $13,397,957.17. Of that amount, plaintiffs paid $13,390,000 by surrendering to the Federal Reserve Bank at Philadelphia flower bonds [2] and paid the balance of $7,957.17 in part with accrued interest on the bonds and in part in cash.

On audit of the return the Internal Revenue Service (IRS) took the position, contrary to that taken by plaintiffs, that the Pennsylvania inheritance tax paid in respect of the one-third elective share was properly chargeable against the share. This resulted in a reduction of the allowable marital deduction by $1,142,443.26.[3] This change, plus other issues, resulted in the IRS assessing a federal estate tax deficiency against the estate of $2,816,733.61. Plaintiffs chose not to contest the matter in the United States Tax Court and, instead, paid the assessed deficiency on February 15, 1974, by surrendering more flower bonds in the face amount of $2,816,500 plus a cash payment of $233.61. Deficiency interest in the amount of $166,496.28 was assessed on the deficiency. Plaintiffs paid the interest on May 9, 1974, by surrendering further flower bonds in the face amount of $165,000 and by paying the balance of $1,496.28 in part with accrued interest on the bonds and in part in cash.

On April 23, 1974, the Pennsylvania Supreme Court rendered its decision in *Estate of Neamand*, 456 Pa. 22, 318 A.2d 730 (1974). Therein the court held that under

---

1. Flower bonds are a type of debt instrument issued by the Department of Treasury pursuant to the Second Liberty Bond Act, 31 U.S.C. § 752 (1976). They are long-term bonds which carry an unusual feature with respect to federal estate tax payments. Although not otherwise redeemable by the owner prior to maturity, these bonds are redeemable at par value, plus accrued interest, upon the death of the owner for the payment of federal estate taxes on the deceased owner's estate. The bonds are known as flower bonds because of the flowering to early maturity upon the owner's death.

Authority to issue such bonds continued in effect until 1971, when Congress amended the

Second Liberty Bond Act to disallow the redemption at par value before maturity of United States bonds in payment of federal taxes. Public Debt Limit Act, Pub.L. No. 92–5, § 4, 85 Stat. 5 (codified at 31 U.S.C. § 757c–4 (1976)). In practice the Department of Treasury ceased offering such bonds before the 1971 amendment.

2. The flower bonds plaintiffs used to pay all the estate taxes, assessed deficiencies, and deficiency interest were U.S. Treasury Bonds, 3½ percent, due February 15, 1990.

3. See I.R.C. § 2056(b)(4)(A).

Pennsylvania law an elective share was not reduced by the Pennsylvania inheritance tax attributable to it if the decedent's will so provided.

After the court's decision, plaintiffs filed a refund claim with the IRS for a refund of estate taxes in the amount of $762,998.49 and deficiency interest applicable thereto of $45,100.61, plus statutory interest. In the refund claim plaintiffs, citing *Estate of Neamand, supra,* reasserted their position that the marital deduction should not be reduced by the state inheritance taxes paid in respect of the widow's one-third elective share. The refund claim was proposed for allowance by the District Director and allowed after approval by the Joint Committee on Taxation.

However, instead of issuing a refund check directly to the plaintiffs for the amount of the refund, the IRS issued a check payable to the order of the Bureau of Public Debt in the amount of $807,824.10. On August 5, 1976, the Federal Reserve Bank of Philadelphia, on instruction of the Bureau of Public Debt, delivered to plaintiffs flower bonds identical to the ones previously surrendered in the face amount of $806,500.[4] Plaintiffs subsequently sold these bonds, realizing net proceeds of $681,-618.52.

The Bureau of Public Debt also issued checks payable to plaintiffs in the total amount of $67,793.26, equivalent to interest at 3½ percent per annum on the $806,500 face amount of the flower bonds surrendered by plaintiffs in payment of estate taxes, for the period subsequent to each surrender date. Except for one other mi-

nor payment of $335.95, plaintiffs assert they have received no further payments in cash or property in satisfaction of their refund claim.[5]

After lodging an unsuccessful protest with the IRS over the form in which the refund was paid and interest rate used, plaintiffs filed the present petition. In it plaintiffs allege that the IRS's failure to make the refund of the agreed upon overpayment *in cash* constituted: (1) a *pro tanto* erroneous disallowance of the refund claim to the extent of the difference between the fair market value of the reinstated flower bonds and their face value and (2) an erroneous denial of statutory interest to the extent of the difference between the prevailing interest rate and the 3½ percent per annum flower bond interest rate.

■ We do not agree with plaintiffs that defendant could not refund the overpayment of federal estate taxes by reinstating a portion of the flower bonds previously surrendered. Nor do we find such a reinstatement constituted a *pro tanto* disallowance of plaintiffs' refund claim.

Plaintiffs contend that once they had surrendered the flower bonds in payment of estate taxes due, including any assessed deficiency and deficiency interest, in accordance with the pertinent statute,[6] regulations,[7] and offering circular,[8] the flower bonds were lawfully redeemed. Citing *Rosenman v. United States,* 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945), and *Ameel v. United States,* 426 F.2d 1270 (6th Cir. 1970), plaintiffs argue that once the bonds were redeemed the par value of the bonds was

---

**4.** By affidavit the Government admitted the $806,500 of reinstated flower bonds was not a *pro tanto* amount of the same bonds plaintiffs had previously surrendered, for surrendered bonds were routinely canceled. Instead, the reinstated bonds were clean bonds of the same loan and issue date, but with different serial numbers.

**5.** There is a $2,000 discrepancy between the parties as to the amount of interest the IRS paid to plaintiffs. The difference is immaterial to the present cross motions for summary judgment. It will be dealt with in the subsequent Rule 131(c) proceeding.

**6.** I.R.C. § 6312 (*repealed* by Public Debt Limit Act, Pub.L. No. 92–5, § 4(a)(2), 85 Stat. 5 (1971), with respect to obligations issued after March 3, 1971).

**7.** Treas.Reg. § 301.6312–1 (1954); Treasury Department Circular No. 300 (4th Rev., March 9, 1973), 31 C.F.R. § 306.0 *et seq.* (1978).

**8.** Treasury Department Offering Circular No. 1005 (February 3, 1958).

applied in payment of the taxes due and not held as a mere deposit. Accordingly, when it was subsequently determined that part of the assessed deficiency was erroneously assessed, the Government was required to refund the overpayment. Since the pertinent regulations and the flower bond offering circular did not contain any express flower bond refund or reinstatement procedure, plaintiffs submit the exclusive, legally mandated method of refunding the overpayment was pursuant to I.R.C. § 6402(a) and Treas.Reg. § 301.6402–2(f)(1) (1954),[9] requiring a cash refund of the overpayment to plaintiffs.

■ Although the flower bonds are issued pursuant to statutory authority, see note 1 *supra*, both parties agree that any early redemption right plaintiffs have stems from the terms of the contract between the bondholders and the Department of Treasury as that contract is expressed in the offering circular. *Estate of Pingree v. Blumenthal*, 41 AFTR 2d 78–1531, 78–1 USTC 84,412 (D.Me.1978); *Estate of Watson v. Simon*, 442 F.Supp. 1000 (S.D.N.Y. 1977). The flower bonds involved herein were issued under Treasury Department Offering Circular No. 1005 which provided the following early redemption rights:

> * * * Any bonds issued hereunder which upon the death of the owner constitute part of his estate, will be redeemed at the option of the duly constituted representatives of the deceased owner's estate, at par and accrued interest to date of payment, *provided*: [Footnote omitted.]
>
> (a) that the bonds were actually owned by the decedent at the time of his death; and

(b) that the Secretary of the Treasury be authorized to apply the entire proceeds of redemption to the payment of Federal estate taxes.

Thus, under the express terms of the offering circular plaintiffs had the right to pay the federal estate taxes on Mr. Boyer's estate by surrendering flower bonds owned by Mr. Boyer at the time of his death. Further, it is well settled that plaintiffs had the right to pay any assessed estate tax deficiencies, deficiency interest, or penalties by surrendering further flower bonds, as long as the bonds were owned by the decedent at the time of his death. *Rev.Proc.* 69–18, 1969–2 C.B. 300; *see also Estate of Simmie v. Commissioner*, 69 T.C. 890 (1978). We also agree with plaintiffs that when flower bonds are surrendered in payment of taxes, and accepted as such, that constitutes payment of those taxes for statute of limitations and statutory interest purposes. *Rosenman v. United States, supra; Ameel v. United States, supra; Busser v. United States*, 130 F.2d 537 (3d Cir. 1942).

■ Once a deficiency assessment is disputed and it is established that an overpayment of the estate taxes has been made by a taxpayer, who paid the assessed deficiency with flower bonds, we do not agree that the Government is limited in refunding the overpayment to making a cash refund or crediting the refund to another open deficiency[10] of the taxpayer under I.R.C. § 6402(a) and Treas.Reg. § 301.6402–2(f)(1) (1954). Although the provisions do proscribe the normal manner in which tax overpayments are refunded, they are not exclusive. Under the set-off provision, 28 U.S.C. § 1503 (1976), it would seem the Government could satisfy a tax refund

---

**9.** I.R.C. § 6402(a) reads:

"(a) *General Rule.*—In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person."

Treas.Reg. § 301.6402–2(f)(1) (1954) reads:

"(f) *Mailing of refund check.*—(1) Checks in payment of claims allowed will be drawn in the names of the persons entitled to the money and, except as provided in subparagraph (2) of this paragraph, the checks may be sent direct to the claimant or to such person in care of an attorney or agent who has filed a power of attorney specifically authorizing him to receive such checks."

**10.** The requirement that the deficiency be an open deficiency is imposed by I.R.C. § 6514(b).

claim by crediting it to any liability, other than a tax liability, which a taxpayer currently owed the Government. The judicial doctrine of equitable recoupment, *Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); *Stone v. White,* 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937), also permits the Government to settle a refund claim in a manner other than provided in I.R.C. § 6402(a), as limited by I.R.C. § 6514(b). *See also Lewis v. Reynolds,* 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932).

Accordingly, we hold that the Government can refund an overpayment of estate taxes, which has been paid with flower bonds, by reinstating a portion of the flower bonds.

There are sound reasons for this result. Were we to hold otherwise, contradictory flower bond redemption results would occur depending upon the judicial forum in which the taxpayer chose to contest the disputed deficiency. Were we to hold otherwise, premature redemptions would also occur which would be contrary to the express terms of the flower bond regulations and offering circular. This possibility would lend this special type of bond to potential abuse.

For example, had plaintiffs herein contested the validity of the disputed portion of the assessed deficiency in the United States Tax Court[11] and prevailed, as they would have due to the contemporaneous Pennsylvania Supreme Court decision clarifying the state law issue, plaintiffs would have been unable to require the Government to make a premature redemption of an extra $806,500 of flower bonds. They would have been unable to require such a redemption because one of the two conditions for redemption, as set forth in the offering circular *supra,* would have been missing. There would have been no estate tax, deficiency, deficiency interest, or penalties outstanding and owing by plaintiffs. Without the existence of such an outstanding amount owing, there is no duty on the part of the Government under the flower bond contract to permit an early redemp-

tion of the bonds. Plaintiffs do not contend otherwise.

Yet, if instead a taxpayer, like plaintiffs, sought to contest the validity of the disputed portion of the assessed deficiency by resorting to the refund procedure, such a premature redemption of the flower bonds would occur under plaintiffs' theory. Under the terms of the offering circular, the Government is clearly bound to redeem the flower bonds at face value in payment of estate taxes, assessed deficiencies, deficiency interest, and penalties. Once the assessed deficiency, or a portion thereof as in this case, is successfully challenged in a refund proceeding, it is no longer owed. Because of the very nature of the refund process, however, the Government has already redeemed flower bonds in the amount found not to be owing. *See Flora v. United States,* 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on rehearing,* 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). There has been an overpayment of that amount by the taxpayer. If the Government cannot make a refund of the overpayment by reinstating a portion of the redeemed flower bonds, a premature redemption of the flower bonds occurs, a redemption which is contrary to the express contract terms of the flower bond offering circular.

We can conceive of no sound reason for encouraging such contradictory flower bond redemption results depending on the judicial forum or procedure the taxpayer chooses in which to dispute the tax. There are other sound reasons for avoiding such a result.

Flower bonds, because of their low interest rate, trade on the open market at a substantial discount. It is due to this discount and the fact that the Government must redeem the bonds at face value in payment of estate taxes that wealthy people, who perceive an imminent estate tax liability, purchase flower bonds. If we were to agree with plaintiffs' theory, however, we would be laying this special type of

---

**11.** Taxpayers are not required to pay the deficiency or any part thereof before seeking judicial review of the deficiency in the United States Tax Court.

bond open to potential abuse. If the Government could not refund an overpayment of estate taxes made by flower bonds by reinstating those bonds, what would prevent a taxpayer from overstating, intentionally or otherwise, the estate tax due or from paying without serious contest an assessment he knows to be invalid or highly questionable? Certainly there would be a financial incentive to do so for then a refund could be applied for and bonds, purchased at a substantial discount, could in effect be sold to the Government at par.

▮ To agree with plaintiffs we would also have to ignore or overturn an old and well-established administrative practice. At the court's request, the Government filed an affidavit on the administrative procedure followed in this case. In that affidavit H. J. Hintgen, Commissioner of the Public Debt of the Department of Treasury, stated that the refund procedure used in this case "has been in effect since 1960 and that such procedure has been uniformly, and consistently, followed since that time." He further stated "[t]hat for the years 1972 through 1978, the Bureau made approximately 250 to 300 reinstatements per year on account of overpayments of Federal estate taxes by bonds and that as of March 1, 1979, at least 70 reinstatements had been processed in 1979." This court is loath to overturn such an established administrative practice without sound reasons or in the absence of statutory or Constitutional violations. See *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Mountain States Telephone and Telegraph Co. v. United States,* 499 F.2d 611, 615, 204 Ct.Cl. 521, 528–529 (1974); *Cf. Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 380–382, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *E. I. du Pont de Nemours & Co. v. Collins,* 432 U.S. 46, 54–55, 97 S.Ct. 2229, 53 L.Ed.2d 100 (1977).

During the supplemental briefing phase of this case, plaintiffs submitted that the above long-standing administrative practice is invalid for it violates 31 U.S.C. § 757c–4 (1976) and 5 U.S.C. § 552(a)(1)(D) and (E) (1976) and is an unconstitutional infringement of plaintiffs' flower bond contract rights. We cannot agree with any of these contentions. We fail to perceive how the administrative practice of reinstating the flower bonds infringed or lessened plaintiffs' rights under the flower bond contract. Plaintiffs were permitted to make an early redemption of flower bonds in the amount of all federal estate taxes, assessed deficiencies, and deficiency interest due on Mr. Boyer's estate. All the administrative procedure does is deny the plaintiffs the right to make a premature redemption of flower bonds in excess of the amounts actually due.

▮ Likewise, we do not believe the reinstatement procedure violates 31 U.S.C. § 757c–4 (1976). The enactment of section 757c–4 merely terminated the Department of Treasury's authority to issue any new issue of bonds with the unique early redemption feature of flower bonds. It did not terminate the authority of Treasury to conduct necessary transactions involving existing, outstanding issues of flower bonds.[12]

▮ Nor do we find that the reinstatement procedure violates 5 U.S.C. § 552(a)(1)(D) and (E) (1976). These statutory provisions require a federal agency to publish in the Federal Register "substantive rules of general applicability" and "each amendment, revision, or repeal of the foregoing" before the rules become binding on the public. See *Anderson v. Butz,* 550 F.2d 459 (9th Cir. 1977); *St. Elizabeth Hospital v. United States,* 214 Ct.Cl. 322, 558 F.2d 8 (1977); *Lewis v. Weinberger,* 415 F.Supp. 652 (D.N.M.1976); 1 Davis, Administrative Law Treatise, § 5.11 (Second Ed. 1978).

---

12. Indeed, plaintiffs in their supplemental brief on the issue recognize that under Treasury Department Circular No. 300, *supra* note 7, outstanding flower bonds can still be exchanged for bonds of a smaller denomination (§ 306.15) or where an owner's name appearing on a security must be changed to conform to what has transpired by operation of law (§ 306.20). Also, flower bonds can be reissued to replace lost, stolen, destroyed, or defaced bonds (§ 306.112).

The substantive rules governing the early redemption of flower bonds in payment of federal estate taxes were published in the regulations and offering circular. Plaintiffs had full knowledge of the redemption rights. The administrative refund procedure did not adversely affect these rights in any way, as we have already discussed. All the procedure did was effectuate the substantive terms of the regulations and offering circular, thus preventing a premature redemption of flower bonds where an assessed deficiency is contested in a refund proceeding as opposed to the United States Tax Court. Thus, we do not view the administrative procedure as an amendment to the prior flower bond regulations.

The final issue which we must decide is whether plaintiffs are entitled to receive statutory interest on the amount of the refunded overpayment and assessed deficiency interest or merely the 3½ percent per annum (the flower bond interest rate) allowed by the IRS. We conclude plaintiffs are entitled to receive statutory interest at the rate provided pursuant to I.R.C. § 6621. The general rule is that statutory interest runs on both underpayments, I.R.C. § 6601(a), and overpayments, I.R.C. § 6611(a).[13] This rule controls here unless the Government can establish an exception to the express terms of I.R.C. § 6611. It has assigned only one reason why section 6611 should not control.

The Government argues that the flower bonds are contractual in nature. Hence, since plaintiffs have contractually agreed to loan the Government money at 3½ percent per annum under the contracts, plaintiffs are not entitled to receive a higher rate of return established in section 6611. The Government cites *Fryer v. United States,* 440 F.Supp. 769 (S.D.Iowa 1977), in support of its position.

We agree with the Government that the flower bonds are a contract as long as they are held by the plaintiffs and, accordingly, during that time plaintiffs are only entitled to receive the 3½ percent per annum stated interest rate. In addition, while the plaintiffs held the flower bonds they had the right to sell them and reinvest the proceeds at a higher return or otherwise utilize the proceeds. However, once the bonds are surrendered in payment of an assessed federal estate tax deficiency, we cannot agree that the contractual interest rate prevails. From the date the bonds were surrendered until the date they were reinstated, plaintiffs lost control over the bonds. This loss of control is equivalent to the loss of control over property which occurs when an assessed deficiency is paid with cash. In both cases the taxpayer loses the right to invest, use, or assign the property (using property in the sense so as to include money and contract rights within its meaning). In both cases the Government gains control over the property. Statutory interest is the compensation to which Congress has decided a taxpayer is entitled when it is ultimately determined the property should never have been taken from the taxpayer's control and use. It is also the compensation the Government is due when a taxpayer retains control over such property when rightfully it should have been paid to the Government, so that the Government would have the use and control of the property (this is the underpayment side of the tax controversy).

We recognize in holding plaintiffs are entitled to receive statutory interest that we are not following the decision of the federal district court in *Fryer v. United States, supra,* and that we are declining to follow the interest element of the long-established administrative practice of the

---

**13.** I.R.C. § 6601(a) reads:

"(a) *General Rule.*—If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at an annual rate established under section 6621 shall be paid

for the period from such last date to the date paid."

I.R.C. § 6611(a) reads:

"(a) *Rate.*—Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at an annual rate established under section 6621."

Treasury, above mentioned. We decline to follow the administrative practice on this issue because we find the administrative practice violates the terms of the statutory interest provision. We decline to follow the decision of the court in *Fryer* because it is based upon a questionable rationale. In *Fryer* the court relied upon language in Form PD 1782, the form which taxpayers submit with flower bonds when surrendering them in payment of federal estate taxes, which states that where there is a *substitution* of flower bonds for tax moneys already paid, a taxpayer has no right to statutory interest. There was no *substitution* of bonds for a cash payment of estate taxes in *Fryer,* however. Therefore, we question the accuracy of the court's relying upon the rules surrounding a substitution of bonds for a cash payment of taxes already made. Here, as in *Fryer,* there is no substitution. The federal estate taxes herein were paid in the first instance with flower bonds.

### CONCLUSION

For the foregoing reasons, we grant defendant's cross motion for summary judgment on the question of whether the Government can refund an overpayment of federal estate taxes, which were paid by surrendering flower bonds, by reinstating a portion of the flower bonds. We grant plaintiffs' motion for summary judgment on the issue of whether plaintiffs are entitled to receive statutory interest on an overpayment of federal estate taxes, which were paid with flower bonds. To the extent each party's motion is not granted, it is denied and the case is remanded to the Trial Division for further proceedings pursuant to Rule 131(c).

NICHOLS, Judge, dissenting:

Respectfully, I dissent. Certainly the enabling legislation, the regulations, and the bond provisions should have stated that the Treasury shall pay any estate tax refund in flower bonds at par value up to the amount of any previous liability so paid by the same taxpayer. They were very defective in not

so providing. That is not a license to this court to enact what should have been provided. In effect, we allow the Treasury to pay a refund in kind, contrary to law that it shall be paid in money unless otherwise provided. The alleged established and uniform practice to pay in bonds is really the only persuasive argument the Treasury has to validate its position. It has acted in accordance with that position 250 or 300 times a year, from 1972 to 1978, and no one has made a challenge. If the practice were published, a different case would be presented. I mistrust the establishment of a legal rule by however many instances of practice, when they are unpublished and depart from apparent law in the Treasury's favor. By 5 U.S.C. § 552, no one not having actual notice may be adversely affected by a rule of practice not published. Plaintiff here denies it had actual notice.