Estate of **William T. PIPER, Sr., Deceased; William T. Piper, Jr., and Thomas F. Piper, Executors**

v.

**The UNITED STATES.**

No. 379–82T.

United States Claims Court.

May 14, 1985.

Theron E. Fry, Wichita, Kan., for plaintiffs. Martin, Pringle, Oliver, Triplett & Wallace, of counsel.

Neil V. Birkhoff, Washington, D.C., with whom was Asst. Atty. Gen., Glenn L. Archer, Jr., Washington, D.C., for defendant. Theodore D. Peyser, Jr., Washington, D.C., of counsel.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY AND PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

This is a suit for interest of $104,461 on overpayments of gift and estate taxes, in which the government has counter-claimed for $125,201 in unpaid gift taxes and $1,217,613 in erroneously refunded estate taxes, plus interest.

Although the figures are complex, the issues may be simply stated. The taxpayer was assessed for a deficiency in estate taxes and chose to pay it, as permitted by law, by redeeming unmatured United States 3½ percent interest "flower bonds" at their par values (which were at least a third in excess of their actual or market values at the time). Subsequently, most of the deficiency was reversed and the taxpayer became entitled to a refund of the estate taxes paid. The questions presented are: (1) Was the taxpayer entitled to a cash refund of the full amount with which it was credited at par value when the flower bonds were redeemed, or was it merely entitled to return of the unmatured bonds? (2) The Internal Revenue Service having paid the taxpayer the full sum in cash, is the government entitled to reinstate and return the unmatured bonds and to recover the sum paid, as an erroneous refund?

### Statement

William T. Piper, Sr. (the decedent), died on January 15, 1970. On April 14, 1971, his estate, the plaintiff, filed a United States

Estate Tax Return with the Internal Revenue Service (I.R.S.) showing no tax to be due. At the time of his death, the decedent owned United States Treasury Bonds, Series 3½ percent, due February 15, 1990 ("flower bonds"), with a par value of $1,408,000. These bonds had a unique feature. Although unmatured and having a fair market value considerably less than par, they could be redeemed at par in payment of the owner's estate tax liability. However, because the return showed that no estate taxes were due, the bonds were included in the decedent's gross estate at their fair market value on January 15, 1971 (an allowable alternate valuation date) at their market value of only $1,015,550, approximately 72 percent of their par value.

On April 9, 1974, after audit, the I.R.S. issued a statutory notice of deficiency in which it determined plaintiff's estate tax liability to be $1,112,594. On September 29, 1975, plaintiff submitted to the Federal Reserve Bank branch in Pittsburgh for redemption at par value, in payment of the estate tax deficiency, flower bonds having a par value of $1,107,500, plus accrued bond interest of $4,740. On February 13, 1976, the Bureau of the Public Debt duly notified plaintiff of the redemption of the Treasury Bond and of the proceeds being credited on plaintiff's behalf to the I.R.S.

However, on September 22, 1977, plaintiff filed a claim with the I.R.S. for a refund of $1,112,594 in estate taxes and interest, and on July 31, 1980, the I.R.S. notified plaintiff that its claim had been allowed to the extent of $1,071,769 but denied as to the remaining $40,825.

Accordingly, to reverse the previous payment, on April 7, 1981, the I.R.S. notified the Bureau of the Public Debt that of the total of $1,112,240 paid by the plaintiff in Treasury Bonds plaintiff was entitled to a credit balance of $1,063,614. In turn, on July 20, 1981, the Bureau of the Public Debt wrote to plaintiff as follows:

Re: 3½ percent Treasury Bonds of 1990

Dear Mr. Piper:

We have been advised by the Director of the Internal Revenue Service Center to which the proceeds of the above bonds were credited, that the Federal estate tax was overpaid as a result of the bond redemption. The Department's regulations specify that the par value plus accrued interest on bonds accepted for redemption in payment of such taxes may not exceed the total tax liability of the estate. We must, therefore, reinstate a sufficient amount of bonds to reduce the total bonds redeemed to an authorized amount and return these bonds. We have requested that the Director submit his remittance to cover the reinstatement figured as follows:

| | |
|---|---|
| Tax payment by bonds | $1,112,239.97 |
| Tax liability | $    48,980.71 |
| Overpayment by bonds | $1,063,259.26 |
| Bonds to be reinstated | $1,059,000.00 |

Upon receipt of the check from the Director, we shall authorize the Federal Reserve Bank of your district to issue and deliver to the address shown above, coupon bonds of the above issue, with current and subsequent coupons attached. A check will be issued by the Department in payment of the coupons which matured subsequent to the redemption of the bonds.

Despite the foregoing, on May 27, 1981, the I.R.S. inconsistently made direct cash refunds to plaintiff of the estate tax overpayments and interest thereon, as if plaintiff had paid the estate tax deficiency in cash rather than in par value of flower bonds. It issued to plaintiff a refund check for $1,217,613 and it credited $223,277 to an outstanding 1969 gift tax liability of the decedent. However, on August 6, 1981, the I.R.S. notified plaintiff that the cash refund of $1,217,613 had been issued in error. In addition, the I.R.S. reversed the gift tax credit previously allowed the estate.

On July 28, 1982, taking the position that the estate tax refund and gift tax credit had been proper, plaintiff filed its petition in this court seeking $77,487 in additional statutory interest allegedly underpaid on its estate tax refund, which it subsequently amended to $104,462.

On December 15, 1982, defendant denied liability for the additional interest and counterclaimed for the estate's unpaid gift tax liability and the $1,217,613 of estate tax erroneously refunded, less any amount due the plaintiff as the result of the reinstatement and return of the excess United States Treasury Bonds submitted by plaintiff in payment of its estate tax liability.

### Discussion

Internal Revenue Code (I.R.C.) § 6312 provides the statutory authority for the Secretary of the Treasury to receive at par value certain issues of U.S. Treasury bonds in payment of federal estate taxes. This section states:

(a) *General Rule.*—It shall be lawful for the Secretary or his delegate to receive, at par with an adjustment for accrued interest, Treasury bills, notes and certificates of indebtedness issued by the United States in payment of any internal revenue taxes, or in payment for internal revenue stamps, to the extent and under the conditions provided in regulations prescribed by the Secretary or his delegate.[1]

The Treasury Regulations implementing this authority to accept United States debt obligations in payment of taxes "to the extent and under the conditions provided in regulations prescribed by the Secretary" are set forth in Treasury Regulations on Procedure and Administration (1954 Code), Section 301.6312–1, as supplemented by (in the case of estate taxes) Treasury Regulations on Estate Tax (1954 Code), Section 20.6151–1. Section 301.6312–1 provides:

(a) Treasury certificates of indebtedness, Treasury notes, or Treasury bills of any series * * * may be tendered * * * before maturity in payment of internal revenue taxes due * * * only if such certificates, notes, or bills, according to the express terms of their issue, are made acceptable in payment of such taxes * * *.

Specifically with respect to estate taxes, Section 20.6151–1 of the Treasury Regulations on Estate Tax (1954 Code), provides:

(c) *Payment with obligations of the United States.* Treasury bonds of certain issues which were owned by the decedent at the time of his death or which were treated as part of his gross estate under the rules contained in § 306.28 of Treasury Department Circular No. 300, Revised (31 CFR Part 306), may be redeemed at par plus accrued interest for the purpose of payment of the estate tax, as provided in said section. Whether bonds of particular issues may be redeemed for this purpose will depend on the terms of the offering circulars cited on the face of the bonds.

Read together these implementing regulations provide that the Secretary is authorized to accept unmatured bonds at par value in payment of federal estate taxes only if provision for such a redemption is explicitly made by the express terms under which the bonds were issued and the bonds were owned by the decedent at the time of his death or treated as part of his gross estate.

Each of the bonds which was submitted for redemption in payment of the decedent's estate taxes contained the following provision:

This bond, upon the death of the owner, will be redeemed at the option of the duly constituted representatives of the deceased owner's estate at par and accrued interest, *if* it constitutes part of such estate and *the proceeds are to be applied to the payment of federal estate taxes, as in said circular provided.* * * This bond is subject to the general Regulations of the Treasury Department with respect to United States bonds. [Emphasis supplied.]

The circular accompanying the issuance of the bonds also provided:

5. Any bonds issued hereunder which upon the death of the owner constitute part of his estate, *will be redeemed at*

---

1. I.R.C. § 6312 was repealed by Act of March 17, 1971, Pub.L. No. 92–5, 85 Stat. 5 with respect to obligations of the United States issued after March 3, 1971.

the option of the duly constituted representatives of the deceased owner's estate, *at par* and accrued interest to date of payment, *provided:*

\* \* \* \* \* \*

(b) *that the Secretary of the Treasury be authorized to apply the entire proceeds of redemption to the payment of Federal estate taxes.* [Emphasis supplied.]

In added emphasis to the prescription that the redemption at par of the unmatured bonds is only allowable to the extent that it is used for payment of estate taxes, Treasury Regulations on Procedure and Administration (1954 Code), Section 301.-6312–1(b) provides in part:

Any certificate, note, or bill offered in payment of internal revenue taxes or for stamps subject to any condition, qualification, or reservation, or for any greater amount than the value at which acceptable in payment of taxes or stamps, as specified in the terms under which such certificate, note, or bill was issued, shall not be deemed to be duly tendered and shall be returned to the taxpayer.

In addition, Treasury Regulations on Money and Finance, Section 306.28(c) (31 C.F.R.), referred to in the estate tax regulations quoted, reaffirms the same rule by implication, by providing that where the bonds exceed the amount of the estate tax, the excess may also be redeemed for similar bonds of a lower denomination without affecting eligibility for redemption, to wit:

Transactions \* \* \* which may be conducted without affecting eligibility [of the bonds for redemption at par for application of the proceeds to payment of the Federal estate tax] are:

(1) Exchange of bonds for those of lower denominations where the bonds exceed the amount of the tax and are not in the lowest authorized denominations \* \* \*.

█ Neither the governing statute or any of the provisions of the regulations deals explicitly with the manner of making a refund of estate taxes paid with flower bonds at par nor the amount thereof when the taxpayer has paid an amount of the estate tax which has been duly assessed but which is later determined to be excessive or an overpayment. However, the question is not one which is inscribed on a *tabula rasa.* It has been dealt with in *Girard Trust Bank v. United States,* 221 Ct.Cl. 134, 602 F.2d 938 (1979), *and as supplemented at* 226 Ct.Cl. 366, 643 F.2d 725 (1981).

*Girard Trust Bank* involved the same problem as that at issue herein except for the fact that the Internal Revenue Service had not made a cash refund of the par value of the bonds to the estate and was not seeking to get it back as an erroneous refund. Instead, the I.R.S. had issued a check to the Bureau of the Public Debt for the amount of the tax refund and the Bureau of the Public Debt had in turn reissued to the plaintiff bonds substantially equivalent to those which the plaintiff had surrendered at par values equivalent to the amount of the refund. Plaintiff sued, claiming that it was entitled to a refund in cash for that amount rather than a refund in par value of bonds. The court ruled, however, that—

Once a deficiency assessment is disputed and it is established that an overpayment of the estate taxes has been made by a taxpayer, who paid the assessed deficiency with flower bonds, we do not agree that the Government is limited in refunding the overpayment to making a cash refund or crediting the refund to another open deficiency \* \* \*. "[T]he Government can refund an overpayment of estate taxes, which has been paid with flower bonds, by reinstating a portion of the flower bonds." (*Girard Trust Bank,* 221 Ct.Cl. at 141, 602 F.2d at 942–43.)

Plaintiff here contends that the *Girard Trust Bank* decision was merely permissive, i.e., it allowed the government an election to make the refund in par value of the flower bond, the currency in which they had been paid, but did not hold that this procedure was what the Internal Revenue

Code required the I.R.S. to do. Accordingly, plaintiff urges, the I.R.S., having exercised its election to repay the plaintiff in cash, there has been no erroneous refund recoverable by the government but only an election by the I.R.S. to make its refund to this plaintiff in cash, which election is now binding on the government.

Plaintiff misconstrues the *Girard Trust Bank* decision. It dealt with the proper construction of the applicable statute, the regulations, the terms of the bonds and the bond circular. This is apparent from its reasoning. The court discussed four reasons for its ruling, which may be quoted and paraphrased as follows:

1. "Were we to hold otherwise, contradictory flower bond redemption results would occur depending upon the judicial forum in which the taxpayer chose to contest the disputed deficiency." *Girard Trust Bank*, 221 Ct.Cl. at 141–42, 602 F.2d at 943. A taxpayer, who contested an estate tax deficiency by first paying and then suing for refund, and prevailed, could profit to the extent of the difference between the par values of the bonds and their market values prior to maturity, while one suing to set aside a similar deficiency in the Tax Court and prevailing, would obtain no such advantage.

2. "If the Government cannot make a refund of the overpayment by reinstating a portion of the redeemed flower bonds, a premature redemption of the flower bonds occurs, a redemption which is contrary to the express contract terms of the flower bonds offering circular." *Id.* 221 Ct.Cl. at 142–43, 602 F.2d at 943. Once the assessed deficiency is successfully challenged in a refund proceeding, it is no longer owed. Therefore, the repayment in cash of the equivalent of par value of the bonds in effect amounts to a redemption at par value for other than the payment of the estate taxes, which is the prerequisite for such redemption prior to maturity.

3. "If we were to agree with plaintiffs' theory * * *, we would be laying this special type of bond open to potential abuse. If the Government could not refund an overpayment of the estate taxes made by flower bonds by reinstating those bonds, what would prevent a taxpayer from overstating, intentionally or otherwise, the estate tax due or from paying without serious contest an assessment he knows to be invalid or highly questionable? Certainly there would be a financial incentive to do so when a refund could be applied for and bonds, purchased at a substantial discount, could in effect be sold to the Government at par." *Id.* 221 Ct.Cl. at 143, 602 F.2d at 943–44.

4. "To agree with plaintiffs we would also have to ignore or overturn an old and well-established administrative practice" of reinstating the bonds in connection with an overpayment of estate taxes. *Id.* 221 Ct.Cl. at 143–44, 602 F.2d at 944.

Thus, it is clear that *Girard Trust Bank* defines the liability of the United States, under the applicable statute, valid regulations and terms of the bonds, in connection with a refund of estate tax originally paid with flower bonds. And that decision of the Court of Claims is a binding precedent in this court. *South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed.Cir.1982).

Plaintiff's argument that in making the cash refund the I.R.S. made a binding election, rather than an erroneous refund recoverable pursuant to I.R.C. § 7405, is insupportable for at least two reasons. First, an election implies an available choice of two methods of computing the refund, both legal. *See Ross v. Commissioner*, 169 F.2d 483, 493 (1st Cir.1948) (Frankfurter, Cir. Justice). But, if, as *Girard Trust Bank* holds, the liability of the United States is limited by law to the return of the bonds, then no officer or employee of the I.R.S. had legal authority to choose to pay out more than the United States owed. Second, the claim that the I.R.S. made an election in paying out an excessive refund implies that there was some possible advantage to the government in exercising that choice. But plaintiff indicates no such advantage, and none is apparent.

■ Finally, plaintiff raises the defense of equitable estoppel, on the ground

that the estate has used the proceeds from the estate tax refund to pay other taxes and administrative expenses, and it cannot return money to the government which it has already spent. However, an essential element of equitable estoppel is reliance by one party on the action of the other *to the detriment* of the first. *See Ross*, 169 F.2d at 496; *Estate of German v. United States*, 7 Cl.Ct. 641, 646 (Cl.Ct.1985). Here, plaintiff has not suffered any detriment by merely paying debts owed by the estate. Moreover, to apply equitable estoppel against the government for such reasons would allow a taxpayer to frustrate the operation of I.R.C. § 7405, which authorizes the United States to bring suit to recover a refund erroneously made.

Accordingly, the cash refund and credit in plaintiff's favor must be deemed erroneous, and, pursuant to I.R.C. § 7405, the government is entitled to recover the refund.

### Conclusion

Defendant's motion for summary judgment on the issue of liability is allowed. Plaintiff's motion for summary judgment is denied. The parties are allowed 30 days within which to file a stipulated judgment which reflects the effect of this decision. In the absence of such stipulated judgment, either party may move for further proceedings, indicating the nature thereof.