Edward W. WELD, Executor of the Will of Horace O. Bright, and Edward W. Weld and Walter H. Weld, Executors of the Will of Elizabeth Bright Weld, Plaintiffs–Appellants,

v.

The UNITED STATES, Defendant–Appellee.

No. 94–5143.

United States Court of Appeals, Federal Circuit.

May 24, 1995.

Robert C. Pomeroy, Goodwin, Proctor & Hoar, Boston, MA, argued for plaintiffs-appellants.

Charles Bricken, Tax Div., Dept. of Justice, Washington, DC, argued for defendant-appellee. With him on the brief were Loretta C. Argrett, Asst. Atty. Gen., and Gary A. Allen, Chief, and Bruce R. Ellisen.

Before RICH, LOURIE, and RADER, Circuit Judges.

PER CURIAM.

Edward and Walter Weld appeal the decision of the United States Court of Federal Claims denying their consolidated claims for estate tax refunds. *Weld v. United States*, 31 Fed.Cl. 81 (1994). The trial court held on summary judgment that the Internal Revenue Service properly values for estate taxes United States Treasury Bonds known as "flower bonds" at their par value plus interest at the time of the owner's death. *Id.* at 84. Flower bonds are long-term bonds redeemable, prior to maturity, at par value plus accrued interest upon the owner's date of death for the payment of federal estate taxes. I.R.C. § 6312.

█ This court reviews a grant of summary judgment by the Court of Federal Claims de novo. *Cohen v. United States*, 995 F.2d 205, 207 (Fed.Cir.1993). Having applied that standard of review, this court concludes that the Court of Federal Claims correctly construed the law governing taxation of flower bonds. Therefore, this court adopts the opinion of the Court of Federal Claims, a ·copy of which is attached as an Appendix.

AFFIRMED.

APPENDIX

In the United States Court of Federal Claims

Nos. 92–582T and 92–583T

(Filed: April 14, 1994)

Tax; federal estate tax; valuation of United States Treasury Bonds known as "flower bonds" when calculating federal estate taxes.

EDWARD W. WELD, et al.,

*Plaintiffs,*

v.

THE UNITED STATES,

*Defendant.*

Allan van Gestel, Boston, Massachusetts, for plaintiffs.

David Gustafson and *Mildred L. Seidman,* with whom was *Assistant Attorney General Loretta C. Argrett,* Washington, D.C., for defendant.

*OPINION*

ANDEWELT, Judge.

In these consolidated estate tax refund actions, plaintiff Edward W. Weld is the sole executor of the estate of Horace O. Bright (Bright) (Case No. 92–583T) and both plaintiffs Edward W. Weld and Walter H. Weld are the executors of the estate of Elizabeth Bright Weld (Weld) (Case No. 92–582T). At the time of their respective deaths, Bright and Weld each owned United States Treasury Bonds known as "flower bonds." In calculating the total value of each estate for federal estate tax purposes, plaintiffs valued the flower bonds at par value, *i.e.,* the value at the stated maturity dates, plus accrued interest up to the date of death. This valuation method was consistent with Rev.Rul. 69–489, 1969–2 C.B. 172. Plaintiffs now contend that this methodology is erroneous and produced an improperly high value of the flower bonds which resulted in an overpayment of estate taxes. Plaintiffs seek a refund of

$114,702.92 for the Bright estate and $17,-613.85 for the Weld estate.

This action is presently before the court on cross-motions which raise the issue of the proper valuation of flower bonds for federal estate tax purposes. For the reasons set forth below, defendant's motion for partial judgment on the pleadings is granted and plaintiffs' cross-motion for partial summary judgment is denied.

### I.

Flower bonds have been defined as follows:

[A] type of debt instrument issued by the Department of Treasury pursuant to the Second Liberty Bond Act, 31 U.S.C. § 752 (1976). They are long-term bonds which carry an unusual feature with respect to federal estate tax payments. Although not otherwise redeemable by the owner prior to maturity, these bonds are redeemable at par value, plus accrued interest, upon the death of the owner for the payment of federal estate taxes on the deceased owner's estate. The bonds are known as flower bonds because of the flowering to early maturity upon the owner's death.

*Girard Trust Bank v. United States*, 221 Ct.Cl. 134, 136–37 n. 1, 602 F.2d 938, 940 (1979).[1]

The statutory and regulatory authority for using flower bonds in the payment of federal estate taxes is contained in I.R.C. § 6312,[2] related regulations, *e.g.*, 26 C.F.R. §§ 301.6312–1, –2 (1969), and the Department of the Treasury (Treasury) circular pursuant to which flower bonds are issued, *see, e.g.*, 1960 Dept. Cir. No. 1050, 25 Fed. Reg. 8964. Flower bonds' early redemption feature makes them useful in estate planning. At times when a flower bond's interest rate is lower than the prevailing market rate for a

newly issued bond with the same maturity date, the flower bond typically can be purchased in the open market at a rate below its par value. Such a discounted purchase can produce an economic benefit for individuals who are likely to die prior to the flower bonds' maturity date because upon the holder's death, the bonds can be credited at full par value against estate taxes due. The potential savings in such a case are illustrated in the following example:

Assume that a decedent owned a $1,000 4¼% bond that was purchased for and has a current market value of $860. His estate is in the 45% tax bracket. By using the bond to pay taxes, the estate will realize a net savings of $77. The bond purchased for $860 can be redeemed at its par value of $1,000, thus saving [the estate] $140 in cash. Bonds used in payment of estate taxes must be valued at their par value. The decedent's estate, therefore, is increased by $140, thus increasing its tax liability by $63 ($140 × 45% = $63).

2 Fed.Est. and Gift Tax Rep. (CCH) ¶ 9764.077.

### II.

█ I.R.C. § 2001(a) imposes a tax on "the transfer of the taxable estate of every decedent." I.R.C. § 2031(a) mandates that when calculating the value of the taxable estate, "all [of the decedent's] property, real or personal, tangible or intangible, wherever situated" is valued "at the time of ... death." Hence, to assess the amount of estate taxes owed by plaintiffs, this court must determine the value of the flower bonds held by Bright and Weld on their respective dates of death.[3]

26 C.F.R. § 20.2031–1(b) provides, in pertinent part:

The value of every item of property includable in a decedent's gross estate under

---

**1.** Flower bonds bear interest at a stated rate from the time they are issued until the time they mature. The interest is payable in six-month intervals in constant amounts. For example, the holder of a $1,000,000 flower bond with an interest rate of 3½% and a maturity date of November 15, 1998, would receive $17,500 from the United States Treasury on May 15 and November 15 of each year until the bond is sold, redeemed in the payment of estate taxes, or reaches maturity.

**2.** Section 6312 was repealed as to United States Treasury Bonds issued after March 3, 1971, by the Act of March 17, 1971, Pub.L. No. 92–5, 85 Stat. 5.

**3.** The bonds here at issue were not held by Bright and Weld personally, but rather by revocable trusts in accordance with 31 C.F.R. § 306.28(b)(1)(iii).

section[ ] 2031 . . . is its fair market value at the time of the decedent's death. . . . The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.

Consistent with this willing buyer/willing seller approach, the fair market value of a United States Treasury Bond on the date of the owner's death generally is determined by reference to open market transactions on the date of death of bonds from the same bond issue (*i.e.*, bonds that pay the same rate and mature on the same day). 26 C.F.R. § 20.2031–2(b). The value of a bond ordinarily is set at the mean between the highest and the lowest open market selling price. 26 C.F.R. § 20.2031–2(b)(1). The regulations recognize, however, that such selling prices are not always the proper measure of a bond's fair market value. 26 C.F.R. § 20.2031–2(e) provides, in pertinent part:

If it is established that the value of any bond or share of stock determined on the basis of selling or bid and asked prices . . . does not reflect the fair market value thereof, then some reasonable modification of that basis or other relevant facts and elements of value are considered in determining the fair market value.

Herein, the parties agree that consideration under 26 C.F.R. § 20.2031–2(e) of "other relevant facts and elements of value" is appropriate when valuing flower bonds because the market selling prices of flower bonds are not always the proper measure of the bonds' fair market value on the date of death. A flower bond's fair market value can be higher than market selling prices on the date of death because the executor of an estate has a viable alternative to selling the bond in the open market. The executor can secure the value of a flower bond instead by using the bond in the payment of estate taxes. If on the date of death the market price of a flower bond is lower than its par value plus accrued interest, this second alternative will yield a higher value to the estate than an open market sale.

In *Bankers Trust Co. v. United States,* 284 F.2d 537 (2d Cir.1960), *cert. denied,* 366 U.S. 903, 81 S.Ct. 1047, 6 L.Ed.2d 204 (1961), the Court of Appeals for the Second Circuit concluded that when valuing flower bonds on the date of death, it is necessary to consider this alternative of using the flower bonds in the payment of estate taxes. The court explained:

[O]bviously such [open market] sales do not reflect the full value of such a bond to the estate of the particular holder whose death establishes the valuation date. Such a bond quoted in the market at less than par is clearly now worth par in the hands of the decedent's executor.

*Id.* at 538. *See also In re Estate of Fried v. Commissioner,* 445 F.2d 979, 984 (2d Cir. 1971), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 663 (1972) ("where Treasury bonds may be used to apply to the estate tax, they may be measured at par if par is higher than the market value on the date of death"); *Estate of Sachs v. Commissioner,* 88 T.C. 769, 783–84, 1987 WL 49299 (1987), *aff'd in part, rev'd in part,* 856 F.2d 1158 (8th Cir. 1988) (flower bonds "must . . . be included in decedent's gross estate at par to the extent that they may be used to pay interest on the deficiency, as well as the deficiency itself") (citing *Estate of Buchholtz v. Commissioner,* 70 T.C. 814, 816, 1978 WL 3345 (1978)); *Estate of Simmie v. Commissioner,* 69 T.C. 890, 1978 WL 3389 (1978), *aff'd,* 632 F.2d 93 (9th Cir.1980).

This analysis is correct. An executor's ability through the redemption feature of flower bonds to secure par value plus accrued interest for the bonds in the payment of estate taxes is provided for in the Internal Revenue Code and related regulations and therefore, in effect, is guaranteed by the federal government. Thus, an estate essentially is as certain of securing a minimum of par value plus accrued interest for a flower bond as it is of securing the full value of deposits contained in a bank account that is insured by the federal government.

In sum, the executor of an estate has the option either to sell flower bonds in the open market or to use them to pay estate taxes. Because the executor can choose either of

these two options, it is appropriate to value the flower bonds for estate tax purposes at the value produced by the option that results in the higher value to the estate on the date of death.

### III.

In the instant cases, on the respective dates of death, the open market value of both the Bright and Weld flower bonds was significantly less than par value plus accrued interest.[4] Hence, for the purpose of calculating the amount of estate taxes due, the value of those bonds must be calculated based on their use for tax payment purposes rather than on a sale of the bonds in the open market. The next question thus becomes what was the value of the Bright and Weld flower bonds for tax payment purposes on the respective dates of death.

Because plaintiffs could have paid estate taxes by redeeming the flower bonds at par value plus accrued interest on the respective dates of death, it would seem to follow that the value of the flower bonds on those dates would be par value plus accrued interest. Plaintiffs' argument to the contrary is based upon a nine-month grace period provided in the Internal Revenue Code for payment of estate taxes. I.R.C. § 6075(a) and 6151(a).[5] Thereunder, while the amount of estate taxes due is calculated based on the value of the estate on the date of death, an executor may pay those taxes at any time within nine months from the date of death, with no penalty or interest charges accruing.

Plaintiffs' argument proceeds essentially as follows. Because no penalty or interest charge is incurred for delaying the payment of estate taxes for nine months after the date of death, "economic reality" dictates that an executor always will take advantage of the grace period and delay tax payment for nine months. A nine-month delay necessarily benefits the estate because during that delay period, the amount of taxes owed remains the same but the estate earns nine months' additional interest on the money that it must ultimately pay over in taxes. Thus, when the taxes are paid by redemption of flower bonds, a nine-month delay permits the estate to earn nine months' additional interest on the bonds at the bond coupon rate. In this setting, plaintiffs argue, any valuation of flower bonds on the date of death must be based on the premise that the executor will not redeem the bonds for par value plus accrued interest until nine months after that date. Plaintiffs then outline a method for calculating the value of flower bonds on the date of death based on this premise.

First plaintiffs propose determining the date and the amount of each economic benefit that the estate will receive from ownership of the bonds during this nine-month period. The estate will receive interest payments on specific dates and then receive par value plus any unpaid accrued interest at the end of the nine-month period when the bonds are redeemed for payment of the estate taxes. Next, plaintiffs calculate as of the date of death the present value of each of these future economic benefits based upon the selling prices of Treasury bills that mature on the same date that each of these economic benefits would occur. Thus, for example, if six months after the date of death the estate would receive a $3,000 interest payment, plaintiffs propose calculating the value on the date of death of that $3,000 future payment by determining the open market sales price on the date of death of a Treasury bill that would pay $3,000 six months later. Similarly, if the estate would receive $1,000,000 in par value and accrued interest upon redemption nine months after the date of death, plaintiffs suggest valuing as of the date of

---

4. For example, certain of the Bright flower bonds had an interest rate of 3½% and a maturity date of November 15, 1998. The mean between the bid and asked price of these bonds on the date of death was $91.76 for each $100 face value of the bonds. When used as payment for estate taxes, the bonds would be worth full face value plus accrued interest.

5. Section 6075(a) provides: "Returns made under section 6018(a) (relating to estate taxes) shall be filed within 9 months after the date of decedent's death." Section 6151(a) provides that estate taxes shall be paid "at the time and place fixed for filing the return."

death that future payment at the open market sales price of a Treasury bill that would return $1,000,000 nine months later. Next, to calculate the total value of the flower bonds on the date of death, plaintiffs add together the values at the time of death of all future economic benefits that would flow from the bonds. That total amount, plaintiffs argue, is the value of the bonds to the estate on the date of death and the amount that should be used in calculating estate taxes due.

Stated in another way, plaintiffs argue that a discount analysis is necessary to determine the value of flower bonds on the date of death because the estate will not receive the full value of the bonds until nine months after the date of death. Under such a discount analysis, each monetary benefit that the estate will receive during these nine months must be discounted from the date of its receipt back to the date of death, using as the discount rate the pertinent Treasury bill interest rates in effect on the date of death. When this methodology is applied to the instant facts, on the respective dates of death the Bright and Weld flower bonds have a value that is less than par value plus accrued interest because the discount rate employed on the dates of death (*i.e.*, the applicable Treasury bill interest rate) was significantly higher than the rate at which the flower bonds accrued interest during the nine-month period.

## IV.

Plaintiffs' argument is interesting and creative and apparently has never been addressed in any published court decision. Nonetheless, plaintiffs' argument ultimately is not compelling because it is not consistent with the standards for valuing assets contained in the controlling regulations.

As described above, the value of an asset for estate tax purposes is the fair market value of the asset, "the price at which the property would change hands between a willing buyer and a willing seller," on the date of death. 26 C.F.R. § 20.2031–1(b). By purchasing flower bonds, Bright and Weld in effect committed themselves to facing two types of potential buyers of the bonds on their respective dates of death: private buyers who stood willing to purchase the flower bonds for cash on the open market at the prevailing market rate and the government which stood willing to credit those bonds against plaintiffs' respective estate tax liabilities at par value plus accrued interest. In a case such as plaintiffs, where the government offers a higher value for the bonds than private buyers on the date of death, it is appropriate to conclude that on that date, an owner of flower bonds who is a willing seller would accept the higher government offer. *See Bankers Trust,* 284 F.2d at 538 ("an important element in the value of the property ... is the use to which it may be put") (quoting *Guggenheim v. Rasquin,* 312 U.S. 254, 257, 61 S.Ct. 507, 509, 85 L.Ed. 813 (1941)). Therefore, herein par value plus accrued interest constitutes the fair market value on the respective dates of death and hence, constitutes the value of plaintiffs' flower bonds on those dates for estate tax purposes.

The nine-month grace period does not change this fair market value analysis. The grace period merely gave plaintiffs an option, which they were not required to exercise, to delay for up to nine months the payment of estate taxes. During this nine-month period, the amount the government would credit against the estate taxes due increased. The measure of the credit remained the same, par value plus accrued interest, but as interest continued to accrue during the nine-month period, the total amount of the credit increased. The question therefore becomes on which of these values must the executor focus when assessing the value of the bonds. Under the regulations summarized above, the crucial time for assessing valuation is the time of death, not any time subsequent thereto. Pursuant to these regulations, in determining the fair market value on the respective dates of death, it is appropriate to focus on the highest amount plaintiffs could have secured on those dates from a willing buyer of the bonds. It is not, as plaintiffs suggest, appropriate to base valuation on the presumption that plaintiffs would have been unwilling on the respective dates of death to

dispose of the bonds at the highest value they could secure either through open market sales or by offering the bonds to the government for the payment of estate taxes. Hence, it is not proper to base the fair market determination as of the dates of death on Treasury bill interest rates on those dates, discounting procedures, and payments that the government made during the following nine months because plaintiffs chose not to dispose of the bonds on the dates of death.

Certainly, the grace period is economically significant to plaintiffs. But it is significant not because it changed the fair market value of the bonds on the dates of death, but rather because it changed plaintiffs' incentive regarding the timing for the redemption of the bonds. Plaintiffs correctly note that they furthered the economic interest of both estates by waiting nine months to redeem the bonds rather than redeeming them on the dates of death. As noted above, an estate would benefit from such a delay because it would be able to secure nine months' extra interest on flower bonds before redeeming them. But the calculation of the optimal time to redeem bonds to maximize their value to an estate is different from the fair market value calculation on the date of death. The fact that plaintiffs benefitted economically by waiting nine months to redeem the bonds does not negate the fact that had plaintiffs been willing to dispose of the bonds on the dates of death, the highest value they could have secured on that date was par value plus accrued interest in the payment of estate taxes owed.

Plaintiffs' proposed method for calculating the value of flower bonds does not measure the fair market value on the dates of death because it does not measure the value based on any transaction on those dates between a willing seller and one of the two possible types of willing buyers. Plaintiffs ultimately ascribe to the flower bonds a value on the dates of death that is different from both the price that a willing buyer would have paid in the open market and the value that the federal government would have given the bonds as credit against estate taxes owed. For example, according to plaintiffs, on the date

of Bright's death, the flower bonds held in the Bright estate, which had a maturity date of November 15, 1998, had an open market value of $3,313,029.60, and a par value plus accrued interest of $3,605,714.35. But plaintiffs' proposed value for these bonds is $3,497,577.35, and plaintiffs have not identified, and cannot identify, any actual or hypothetical willing buyer that offered or would have offered to plaintiffs on the dates of death that precise value for these or the other flower bonds.

What then does plaintiffs' method for calculating the value of the flower bonds measure if not the fair market value on the dates of death? Plaintiffs' method measures the value to plaintiffs on the dates of death of all funds that plaintiffs later received during the nine-month grace period up through the time they redeemed the bonds. This method produces a lower bond value on the dates of death than the redemption price that plaintiffs actually could have received on those dates for payment of taxes, because the estates would not have gained the nine months' additional interest on the flower bonds if the bonds were redeemed on the dates of death for the payment of taxes. But maximizing the long-term benefit to a particular seller simply is not the proper focus when assessing the fair market value of an asset on a particular date.

The fallacy in plaintiffs' valuation approach can be seen by analyzing the benefits to an individual that presently flow from the availability of a 28% maximum rate on capital gains. I.R.C. § 1(j)(1). Consider the situation where an individual is in the 39.6% marginal federal tax bracket and had earlier purchased a stock for $500 which today can be sold to a willing buyer for $1,500. Also assume that as of today that individual has owned the stock for one day less than the one-year holding requirement for capital gains treatment. If the individual sold the stock today for $1,500, the individual would have a $1,000 gain which would be taxed at the 39.6% rate and produce a net gain of $604. On the other hand, if the individual held the stock for one extra day before selling it for $1,500, the $1,000 gain would be taxed at the 28% rate and the individual's net

gain would be $720. Hence, by refusing to sell the stock today and holding the stock for one extra day, the individual likely would increase his or her economic benefit by about $116.[6] But the fact that tomorrow the stock would have a value to the particular stockholder that is higher than the market price today would not be relevant when assessing the fair market value of the stock today. The fair market value is assessed based on a willing buyer and willing seller and the fair market value of the stock today under that standard would be $1,500. It is irrelevant to the determination of the fair market value of a stock on a particular day that, all circumstances considered, the owner of the stock may find it in his or her best interest to refuse to sell the stock at the market price on that day and instead wait until a future date to sell the stock.

Plaintiffs are in an analogous position to the stockholder in the above hypothetical example. Due to circumstances extrinsic to assessing the fair market value of the flower bonds, i.e., the nine-month grace period, it was in the estates' economic best interest for plaintiffs not to redeem the flower bonds on the respective dates of death but instead to wait nine months. But, as in the example above, the fair market value of the flower bonds on one date is not measured by reference to the value of the bonds to plaintiffs on a future date. Rather, the fair market value of the bonds is the price at which plaintiffs, as willing sellers, would sell the bonds to a willing purchaser. The valuation date is mandated by statute and therefore the court must assess the value that a willing seller of the bonds would receive on the date of death. The fact that plaintiffs actually chose not to redeem the bonds at the best available price on the dates of death does not support valuing the bonds on those dates at an amount less than the amount the government stood ready to pay on those dates to redeem the bonds for the payment of estate taxes.

In sum, the tax laws, in effect, left plaintiffs with a choice. They could redeem the bonds in the payment of estate taxes for par value plus accrued interest on the dates of death or they could take advantage of the grace period and wait up to nine months and redeem the bonds for par value plus a slightly higher accrued interest. Plaintiffs selected the economically optimal choice and waited the full nine months before redeeming the flower bonds and thereby secured the extra interest. But when valuing all assets for estate tax purposes, the regulations focus on the fair market value on date of death, not on the amount of income that a bond owner potentially could receive during the nine months after death. Herein, on the respective dates of death, the government stood willing to redeem the bonds for par value plus accrued interest in the payment of estate taxes. That was the highest value plaintiffs could secure on those dates. It would be inconsistent with the controlling standards to ignore the existence of such a willing buyer and to designate the fair market value on the dates of death at an amount that is less than the amount that a willing buyer was prepared to pay. Thus, while the premise that plaintiffs would be unwilling to turn the bonds over to the government on the dates of death in the payment of taxes owed is an appropriate premise for predicting the timing of plaintiffs' actions, it is not determinative when assessing the fair market value of the bonds on the dates of death.

"A motion for judgment on the pleadings should be denied unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of [plaintiff's] claim." *Branning v. United States*, 215 Ct.Cl. 949, 950, 1977 WL 9606 (1977) (quoting *Brown v. Bullock*, 194 F.Supp. 207 (S.D.N.Y.), *aff'd*, 294 F.2d 415 (2d Cir.1961)). This court concludes, based exclusively on its consideration of the matters contained in the pleadings, that plaintiffs' proposed method for calculating the value of flower bonds on the dates of death is incorrect as a matter of law. Plain-

---

6. Of course, this analysis presumes that the value of the stock does not fall in the one-day period. Obviously, if the individual holds the stock for an additional day and the stock drops precipitously in price in that one day, the decision to hold the stock would not have proven to be in the individual's economic best interest.

tiffs can prove no facts that would entitle them to relief based on that theory. The nine-month grace period certainly gives flower bond holders an economic advantage in that it permits their estates to earn nine months' extra interest on the bonds before redeeming them in the payment of taxes. But this grace period does not also provide the additional financial advantage that plaintiffs seek to secure here.

### *Conclusion*

For the reasons set forth above, defendant's motion for partial judgment on the pleadings is granted and plaintiffs' cross-motion for partial summary judgment is denied. On or before May 16, 1994, the parties shall file a status report, jointly or separately, advising the court as to their intentions with respect to further proceedings in this action.

**IT IS SO ORDERED.**

/s/ Roger B. Andewelt
Roger B. Andewelt
Judge