ESTATE OF William T. PIPER, Sr., Deceased: William T. Piper, Jr., and Thomas F. Piper, Executors, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 379–82T.

United States Claims Court.

Feb. 3, 1986.

Neil V. Birkhoff, Roanoke, Va., with whom was Asst. Atty. Gen., Glenn L. Archer, Jr., for defendant; Theodore D. Peyser, Washington, D.C., of counsel.

## OPINION ON DEFENDANT'S MOTION FOR JUDGMENT

PHILIP R. MILLER, Judge:

In this suit, plaintiff sought interest of $104,461 on overpayments of estate and gift taxes. The government counterclaimed for $125,201 in unpaid gift taxes and $1,217,613 in erroneously refunded estate taxes, plus statutory interest. On May 14, 1985, the court granted the government's motion for summary judgment on the issue of liability, and denied plaintiff's cross-motion for summary judgment. *Piper v. United States*, 8 Cl.Ct. 243 (1985).

Defendant now moves for an order entering judgment on its counterclaim against plaintiff of $125,201 for gift taxes owed, plus statutory interest from April 15, 1970, and $1,217,613 for recovery of the erroneous refund, plus statutory interest from May 27, 1981.

Plaintiff opposes the amount sought by defendant, contending its liability for the erroneous refund is only $844,476, plus statutory interest. Plaintiff also contests the figures used by defendant for calculating offsetting statutory interest owed plaintiff.

*Statement*

The facts upon which liability was determined are presented in the prior opinion of this court. *Piper, supra.* The court held that a 1981 cash refund made to plaintiff and a credit against gift taxes owed by plaintiff, resulting from an overpayment of estate taxes in 1975, were erroneous, where plaintiff had paid such estate taxes by redeeming unmatured United States "flower bonds" at their par values rather than by paying cash. The court concluded that, as a matter of law, the refund should have been made by reinstating and returning the bonds rather than by cash and

Theron E. Fry, Wichita, Kan., for plaintiffs; Martin, Pringle, Oliver, Triplett & Wallace, Wichita, of counsel.

credit, and pursuant to Internal Revenue Code (I.R.C. or the Code) § 7405 the government was entitled to recover the cash refund and reverse the gift tax credit. *Id.*, at 249.

The parties dispute the amount of the judgment, taking different positions as to extent to which the May 1981 refund was erroneous. Defendant contends that the entire refund was erroneous, and asks for its return ($1,217,613 plus statutory interest) and reversal of the credit against plaintiff's gift tax liability ($125,201 plus statutory interest). Defendant concedes that it is obligated to return to plaintiff the flower bonds in kind, plus statutory interest on the fair market value of such bonds from September 29, 1975 to the approximate date of return. Defendant also concedes that it owes plaintiff a refund with interest of a supplemental $5,094 cash payment made by plaintiff on September 29, 1975, in addition to the bonds.

Plaintiff has two objections to defendant's proposed judgment. First, it claims that only $844,476 of the 1981 cash refund was erroneous. The remaining $373,137, according to plaintiff, was not erroneous, because defendant owed plaintiff a cash refund of the $5,094 supplemental payment and a cash payment of $368,043 for statutory interest on the $5,094 and the bonds. It avers that its liability should be only for that portion that was in error.[1] Thus the interest due the government on the erroneous refund would be computed on a $844,476 base rather than on $1,217,613.

Plaintiff also objects to the base upon which defendant calculates the interest due plaintiff on the bonds. Assuming the validity of its prior argument that it received interest on the bonds to 1981, plaintiff fashions an additional contention that by not returning the bonds in 1981, as this court determined it should have, the government "took or kept" the bonds from plaintiff anew. Plaintiff thus claims it is entitled to statutory interest based on the fair market value of the bonds from that date, May 27, 1981 ($886,518), and not their value at the 1975 redemption ($814,675).

## Discussion

### I.

Consideration is given first to plaintiff's contention that a portion of the 1981 refund (plus $5,094) was not erroneous, because it represented the payment of interest owed to plaintiff on its overpayment of bonds.

Plaintiff argues first that the interest received by it in 1981 was *actually* intended as interest on the fair market value of the bonds rather than on the mistaken cash refund. But since in 1981 the Internal Revenue Service mistakenly assumed that plaintiff had overpaid cash rather than bonds, there is no basis for any inference that the Service ever determined the fair market value of the bonds, let alone the interest due thereon, prior to the instant litigation. Thus, the 1981 interest payment could not have been intended to be interest on the overpayment of bonds, and the only reasonable inference is that such sum was interest on an overpayment of tax assumed to have been made in cash.

Second, plaintiff argues that, irrespective of what was intended by the 1981 interest payment, since plaintiff was owed interest on the bonds in any event, to the same extent that portion of the cash refund may not be deemed erroneous.

This argument is without statutory support. Internal Revenue Code § 6611 authorizes the payment of interest on a refund of an overpayment as follows:

(a) *Rate.*—Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at an annual rate established under section 6621.

(b) *Period.*—Such interest shall be allowed and paid as follows:

\*　　\*　　\*　　\*　　\*　　.\*

---

1. Plaintiff concedes that it owes defendant $125,201 plus interest for the erroneous credit to plaintiff's gift tax liability. Its opposition to defendant's motion for judgment focuses solely on that portion of the judgment relating to estate tax overpayment and refund.

(1) *Refunds.*—In the case of a refund, from the date of the overpayment to a date (to be determined by the Secretary or his delegate) preceding the date of the refund check by not more than 30 days * * * *.

■ While interest on an overpayment of tax is *allowable* from the date of overpayment and increases with each day that passes, it is apparent from the face of the statute that the interest is not actually *allowed* until after the Secretary or his delegate recognizes the overpayment and fixes a date for the issuance of the refund check. For, until that time, the amount of the interest is not ascertained and cannot be refunded or credited against any other liability. The mere accrual of interest in favor of a taxpayer does not mean that it has been refunded or credited to him.

This result also is required by I.R.C. § 6602. Insofar as pertinent, this section provides:

§ 6602. *Interest on erroneous refund recoverable by suit*

Any portion of an internal revenue tax (or any interest * * *) which has been erroneously refunded, and which is recoverable by suit pursuant to section 7405, shall bear interest * * * from the date of the payment of the refund.

■ The "erroneously refunded" interest to which § 6602 refers is that received by the taxpayer on the principal of the erroneous refund; and the entire amount which is recoverable, consisting of both principal and interest received thereon, is to bear interest. The section makes no provision for the reduction of the recovery because plaintiff is owed interest on some other debt. It provides merely for the correction of a single transaction between the taxpayer and the government, and not for an overall balancing of liabilities owing between the parties. Accordingly, interest *allowable* on the overpayment of bonds cannot constitute an offset to the taxpayer's liability to restore the entire cash refund and pay interest thereon, and the simple fact of the government's continuing liability to pay interest on the value of the bonds does not permit this court to deem any portion of the refund paid as not erroneous.

There is no inequity in this. Plaintiff has had the use of the entire $1,217,613 refund from May 27, 1981, and either did invest or could have invested it and earned interest thereon until the present. There is no good reason why it should not pay interest thereon to the United States, as provided by I.R.C. § 6602. Offsetting this, the United States is obligated to pay and plaintiff is entitled to receive interest on the fair market value of the bonds from September 29, 1975, the date of overpayment, to the present, as § 6611 provides, because the United States erroneously retained, while plaintiff was deprived of the use of, the bonds for that period.

II.

Building upon the structure of its fallacious argument that interest on its overpayment of bonds was paid to it in 1981, plaintiff next contends that in 1981 the Service "took or kept" the bonds from plaintiff's control. Accordingly, it wants interest from May 27, 1981, to the present calculated on the fair market value of the bonds in 1981 ($886,518), not 1975 ($814,675).

■ This contention is also contrary to the statute. Section 6611(b)(1) authorizes interest on "overpayments", "from the date of the overpayment to a date * * * preceding the date of the refund check by not more than 30 days * * *." Interest is to be calculated, therefore, only for the single, continuous period beginning on the date of the overpayment.

■ Plaintiff here made only one "overpayment," when it tendered its bonds in 1975. The erroneous refund of cash in 1981 did not cause plaintiff to make a contemporaneous overpayment of bonds; plaintiff neither paid nor tendered any tax in cash or in kind capable of constituting an overpayment at that time. There is no reason to impute to the error the effect of constructive return of the bonds and a new

overpayment by plaintiff. Accordingly, the value of the bonds in that year cannot provide a new basis for calculating interest from 1981 to the present. Defendant's proposed calculation of interest is correct.

### Conclusion

Pursuant to the government's concession, it is ordered that judgment for plaintiff be entered as follows:

(1) Defendant shall reinstate plaintiff's flower bonds as provided by the Bureau of the Public Debt in its letter to plaintiff of July 20, 1981;

(2) Defendant shall refund plaintiff's 1975 cash overpayment of $5,094.34, plus statutory interest thereon from September 29, 1975; and

(3) Defendant shall pay to plaintiff statutory interest from September 29, 1975, on the fair market value of the flower bonds as of September 29, 1975 ($814,675.14), such interest to be adjusted downward, dollar for dollar, for any coupon interest paid or to be paid to plaintiff by the Bureau of Public Debt for the period September 29, 1975 to the date of reinstatement.[2]

Judgment is to be entered for defendant on its counterclaim in the amount of $1,217,613.30 plus statutory interest from May 27, 1981, and in the amount of $125,-200.90 plus statutory interest from April 15, 1970.

The complaint is otherwise to be dismissed.

---

**2.** In its July 20, 1981 letter, the Bureau of the Public Debt stated its intent to pay plaintiff, by check, for "coupons which matured subsequent to the redemption of the bonds." *Piper,* 8 Cl.Ct. at 245. At oral argument, plaintiff conceded that this adjustment is proper to avoid duplication of interest.